Gilbert H. King, J.
The complaint in this action alleges that plaintiff, at the request of defendant, provided board, room, clothing, medical care and guidance for Cathleen Andrews, daughter of the defendant, for the period from January 1,1961, to August 31, 1963, at the agreed rate of $25 a week. Plaintiff is the husband of a maternal aunt of the child Cathleen, an infant under the age of 16 years. The child was left in the care of the plaintiff by the defendant after the child’s mother was killed in an automobile accident.
Defendant moves to dismiss the complaint pursuant to CPLR 3211 (subd. [a], pars. 3, 5, 7) and bases the motion on plaintiff’s failure to allege compliance with section 375 of the Social Welfare Law of the State of New York which provides: “ Except for relatives within the second degree of the parents of a child or children, legally appointed guardians, schools and academies meeting the requirements of the education law as to compulsory *955 education, camps operated for profit for the accommodation of school age children during school vacation periods under permits issued by health officers pursuant to chapter seven of the state sanitary code, and persons with whom a child or children are placed out, no person shall receive, board or keep any child under the age of sixteen years unless certified or licensed to do so as provided in this title.” (Emphasis supplied.)
In his answering affidavit plaintiff makes no claim to the possession of the license required by section 375. He does claim, however, that the section does not apply to him under the circumstances of this case and because of the provisions of section 374 of the Social Welfare Law under which the defendant as parent of the child had the legal right to ‘ ‘ place out or board out” the child. It is plaintiff’s contention that the child was legally ‘1 placed out ’ ’ with him by the defendant and, therefore, he is one of the class of persons not required to have a license under the provisions of section 375.
Plaintiff’s claim for payment, however, cannot successfully rest on the contention that the child was “placed out ” with him for “ placed out ” is defined in subdivision 12 of section 371 of the Social Welfare Law as arranging for the free care of a child.
The only other class of persons exempted from the operation of the licensing statute in which plaintiff could claim to fall is “ relative[s] within the second degree of the parents of a child.”
There is no statutory or common-law prohibition against the delivery of a child by the parent into the home of her maternal aunt and the aunt would not be required to have a license under section 375 to receive, board or keep the child and to receive payment for such care. It would seem to be anomaly to hold that the receiving, boarding or keeping of the child by the husband of the aunt in his household, of which the aunt was a part, required him to have a license for such purpose and that his failure to have such a license would be a misdemeanor (Social Welfare Law, § 389), because plaintiff is not a blood relative within the second degree of the parent. The court does not believe that such was the intention of the Legislature under the circumstances of this case.
It is worth noting that in the definitions of “ placing out ” and “ boarding out ” contained in subdivisions 12 and 14 respectively of section 371 of the Social Welfare Law those excluded from the defined phrases are certain named persons (some of whom are not blood relatives) and the family of certain relatives, indicating, it seems to the court, the clear intention of the statutes to permit, approve and indeed promote, whenever pos *956 sible, the care of a child with the family of relatives rather than with strangers.
The court agrees that ordinarily “ relative ” when used in a statute means “blood” relative (“relative” is not defined in the General Construction Law) and in that connotation section 375 would prohibit plaintiff’s action and expose him to a misdemeanor charge. “ The intent of the Legislature in enacting legislation is the primary object to be found. Whenever such intention is apparent it must be followed in construing the statute. As the rule is summarized in section 111, McKinney’s Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], from the cases cited therein, ‘ * * * a thing which is within the letter of the statute is not within the statute unless it be within the intention of the lawmakers, but a case within the intention of a statute is within the statute, though an exact literal construction would exclude it. It is a familiar legal maxim that “ he who considers merely the letter of an instrument goes but skin deep into its meaning,” and all statutes are to be construed according to their meaning, not according to the letter.’ ” (Matter of River Brand Rice Mills v. Latrobe Brew Co., 305 N. Y. 36, 43-44.)
The court has read the Reports of the Special Committee on Social Welfare of 1948 and 1949 in the Legislative Annals of those years and that portion of New York Legislative Document (1948, No. 51, .p. 93) quoted in the dissenting opinion of Judge Burke at pages 125, 126 in People v. Scopas (11 N Y 2d 120) all of which indicate and indeed state that the concern of the Special Committee was with the protection of children placed with unrelated persons for extended care in the foster home which may be that of an unrelated guardian functioning either legally or casually.
In the court’s opinion the word “ relative ” as used in section 375 of the Social Welfare Law encompasses the dictionary definition of “ relative ” i.e. “ a person connected by blood or marriage.” In that sense plaintiff was a relative within the second degree of the parent of the child and was excluded from the licensing provisions of section 375 and may maintain this action.
Defendant’s motion is denied, without costs.