Vern J. SCHIFF, Appellant,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,** Appellee,

Attorney General of the State of North Dakota; and William Clairmont, Inc., a North Dakota corporation, Respondents.

Civ. No. 910244.

Supreme Court of North Dakota.

Feb. 4, 1992.

Eugene F. Buresh of Freed, Dynes, Reichert, Buresh & Herauf, PC, Dickinson, for appellant.

Dean J. Haas, Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

MESCHKE, Justice.

Vern Schiff appealed from an order by the Workers Compensation Bureau that was affirmed by the district court. The Bureau ruled that Schiff was a candidate for vocational rehabilitation, and was not entitled to a lump sum payment of disability benefits. We affirm.

While managing a ranch in 1981, Vern Schiff was thrown from a horse, injuring his left hip and pelvis, and resulting in separation of his pelvic cartilage. Schiff received Workers Compensation benefits, including medical, disability, and partial permanent impairment for his injury. Following the accident, orthopedic specialists treated Schiff but he did not fully recover and his pelvic separation continued. This prevented Schiff from performing any physical labor and precluded return to his former position at the ranch.

In 1983, the Bureau had vocational experts test Schiff to assess the possibility of retraining him for other employment. The test reports showed that Schiff was not employable without retraining, and that he possessed strong academic and mental abilities. A vocational rehabilitation plan was recommended for education that would enable Schiff to return to employment.

Schiff resisted retraining. He began demanding a lump sum payment from the Bureau equal to the present value of all future disability payments on the grounds that he was totally and permanently disabled. In 1984, the Bureau offered him a lump sum settlement in an amount equal to the cost of vocational retraining. When Schiff would not agree to that amount, the offer was withdrawn. Thereafter, Schiff repeatedly requested a lump sum payment, and the Bureau persistently failed to respond. The Bureau did, however, continue to offer to develop a rehabilitation plan for him consistent with his physical limitations.

Finally, frustrated with the Bureau's lack of response to his requests for a lump sum payment, Schiff petitioned the district court for a writ of mandamus. The district court, on October 9, 1990, directed the Bureau to respond to his request for a lump sum, or to show cause why it did not do so. The Bureau promptly issued an order denying Schiff's request for a lump sum payment, ruling that Schiff was a candidate for vocational rehabilitation, and that Schiff failed to prove that a lump-sum payment was in his best interest. The Bureau found that Schiff "failed to provide any evidence whatever that payment in a lump sum is in his best interest in any way other than economically", declared that "economic best interest is clearly insufficient" for a lump sum payment, and concluded that "economic best interest is not a test for deter-

mining whether payment of a lump sum is in claimant's best interest" if it did not "rehabilitate him." The order directed that Schiff "cooperate with further vocational assessment to determine whether he is a rehabilitation candidate or is permanently and totally disabled." Schiff appealed.[1] The same district court that issued the writ of mandamus affirmed.

Schiff appeals to this court. Here, Schiff continues to argue that the Bureau wrongly determined that he is a candidate for rehabilitation because he is totally and permanently disabled, and that the Bureau improperly denied him a lump sum payment.

The scope of judicial review of the Bureau's decision is governed by NDCC 28–32–19. The Bureau's decision must be affirmed unless we conclude that the findings of fact are not supported by a preponderance of the evidence, that the conclusions of law are not supported by the findings, or that the decision is not in accordance with law. *Wendt v. N.D. Workers Compensation Bureau* 467 N.W.2d 720 (N.D.1991). We determine only whether the agency reasonably made its factual determinations from the greater weight of all the evidence in the record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979). These standards guide our review of the Bureau's decision here.

Schiff argues that he is totally and permanently disabled and thus, in effect, beyond rehabilitation. Schiff urges that rehabilitation applies only to those temporarily or partially disabled. Schiff relies on the medical treatment records of the orthopedic specialists who have treated him since his 1981 injury. These records show that they concluded that Schiff was "permanently disabled" from his 1981 injury; that it was "highly unlikely that his physical status will change in the future"; and that "[Schiff's] prognosis and level of re-

covery . . . has been reached . . .", and "no further recovery may be expected at this point." Additionally, Schiff claims that retraining is unrealistic because dealing with his physical limitations and pain on a day-to-day basis are all that he can handle.

There is no question that Schiff's disability precludes resumption of his duties as a ranch foreman, or any like work. The Bureau asserts, however, that disability is both a medical and a vocational question and that Schiff's inability to work at his former employment does not wholly preclude him from retraining for a new field of employment within his physical limitations.

The Bureau is directed to "assist the claimant . . . in the adjustments required by the injury to the end that the claimant may receive comprehensive rehabilitation services." NDCC 65–05.1–01(2) (1991). The legislature has recently clarified the purpose of rehabilitation. "It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs." NDCC 65–05.1–01(3) (1991). To this end, the Bureau has had Schiff undergo several medical and vocational assessments. These assessments indicate that the Bureau fairly found that Schiff is a candidate for rehabilitation.

In 1983, an orthopedic specialist, Dr. Gruby, reported that Schiff could return to work so long as he avoided excessive walking, stooping, lifting, or other activities that would cause rotation stress on his pelvic girdle. Dr. Gruby added that Schiff should avoid holding a static position as well, such as long trips in a car. Dr. Godfread conducted a 1989 medical examination of Schiff and reported that he was capable of returning to work of a sedentary to light nature, avoiding any lifting

---

1. Thereafter, on December 19, 1990, the Bureau issued an order awarding Schiff rehabilitation benefits for vocational retraining. The Bureau also ordered Schiff to comply with a retraining program. Schiff refused to participate in the proposed retraining, and petitioned the Bureau for rehearing. On September 3, 1991, the Bu-

reau affirmed the December 19, 1990 order, but discontinued Schiff's benefits for his non-compliance with the proposed retraining. Since these orders came after Schiff's appeal to the district court in this case on November 8, 1990, Schiff has separately appealed them, and they are therefore not reviewable in this appeal.

over ten pounds. We see no medical opinion in this record saying that Schiff's physical condition and chronic pain preclude his education and retraining.

A psychologist's interpretive report in 1983 said: "From an ability standpoint, Vern can do anything that he wants. He has the academic and mental abilities to master most any job." In 1990, the Bureau had Schiff undergo a neuropsychological evaluation by Patrick Konweko who reported that Schiff has a high average I.Q. with "no abnormalities that would interfere with vocational and/or educational rehabilitative efforts" and that "in general, [Schiff] appears to be coping adequately."

Additionally, vocational specialist Earl Houston reported preliminarily on July 12, 1990, that, "because of his intellectual capacity skills, it would be relatively easy to find him a retraining program wherein he could perform within physical restrictions," and also that "Vern is not willing to consider a retraining program." This evidence supports the Bureau's finding that Schiff is a candidate for rehabilitation.

To remain eligible for benefits, Schiff must cooperate with further rehabilitation evaluations, testing, and retraining properly recommended by the Bureau. NDCC 65–05.1–04(4), (5) (1989). Based on the medical and vocational assessments in this record, we affirm the Bureau's finding that Schiff is a candidate for rehabilitation.

█ Schiff argues that the Bureau improperly denied his request for a lump sum payment because it misinterpreted the "best interest" standard for a lump sum payment. At the hearing, Schiff testified that he wanted to use the money to invest, with his daughters, in the business of breeding horses. Schiff asserts that he thus shows that a lump sum payment is in his economic best interest. Further he argues that, because there are no limiting factors in the "best interest" standard, the Bureau arbitrarily denied the lump sum payment by tying it to his rehabilitation.

█ The authority for the Bureau to make a lump sum payment is given in NDCC 65–05–25 (1989).[2] A lump sum "may" be paid if the Bureau "determines [that] it is in the best interest of the claimant." *Id.* In construing an antecedent statute authorizing a lump sum payment of future benefits, this court has ruled that the authority to pay benefits in a lump sum is entirely within the discretion of the Bureau. *Gotchy v. North Dakota Workmen's Compensation Bureau*, 49 N.D. 915, 194 N.W. 663 (1923). Exercising its discretion, the Bureau has fairly required Schiff to cooperate with further vocational assessment, looking to his return to gainful employment rather than to continued payment of disability benefits. We do not agree that the Bureau must make a lump sum payment whenever a disabled claimant believes that it is in his "economic best interest." We conclude that the Bureau did not abuse its discretion in denying Schiff's request for a lump sum payment.

We affirm the decision of the Bureau.

ERICKSTAD, C.J., and LEVINE and VANDE WALLE, JJ., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.

2. The relevant part of NDCC 65–05–25 (1989) says:

"The bureau, if it determines it is in the best interest of the claimant, may pay a lump sum equal to the present value of all future payments of compensation or a lump sum stipulated to by the claimant after an opportunity to seek legal counsel...."