OPINION OF THE COURT
 

 Simons, J.
 

 Jeremy Hoffman, the infant respondent in this proceeding, suffers from a learning disability. Because of this, he is eligible for special education under Federal and State programs and finds himself a party to this dispute between petitioner, Northeast Central School District, and respondent, Commissioner of Education. They disagree about the authority of the Commissioner to approve Jeremy’s unilateral transfer by his parents from Northeast Central School District, his home district, to Pine Plains Central School District. Having transferred their son because they believed Northeast lacked an appropriate program for him, the parents sought to have the Commissioner confirm their decision and order Northeast to pay Jeremy’s tuition and transportation costs to Pine Plains. The Commissioner ruled in favor of the parents and Northeast challenges that ruling in this CPLR article 78 proceeding. Supreme Court dismissed the petition but denied the parents’ application for attorneys’ fees without explanation. The Appellate Division modified the judgment to the extent of authorizing reimbursement to the parents only from the time subsequent to the commencement of the administrative review process.
 

 The questions presented are (1) whether the Commissioner could order reimbursement for tuition and transportation costs to parents after they had unilaterally withdrawn their child from Northeast’s special education program and transferred him to Pine Plains Central School District and (2) whether the Supreme Court properly denied the parents’ request for attorneys’ fees without stating any special circumstances warranting denial. We conclude that the Commissioner’s determination approving the transfer had a rational basis, that he had the power to order reimbursement to the parents and that reimbursement could, in these circumstances, be retroactive to the date of the child’s placement in the alterna
 
 *603
 
 tive special education program at Pine Plains and could include transportation costs. We conclude, also, that the Supreme Court should not have refused the parents’ request for attorneys’ fees unless it found special circumstances warranting denial. Accordingly, we reinstate the Commissioner’s order and remit to the Supreme Court to reconsider the application for attorneys’ fees.
 

 I
 

 Jeremy’s entitlement to benefits rests upon New York State’s participation in the program for educating disabled persons set forth in the Federal Government’s Individuals with Disabilities Education Act (20 USC § 1400
 
 et seq.).
 

 [1]
 

 The Act delineates a scheme under which a State, in order to receive Federal financial assistance, is required to effectuate a State plan which fulfills the requirements of the Education Act and assures all children with disabilities the right to a "free appropriate public education” (20 USC § 1412 [1];
 
 see, Hendrick Hudson Dist. Bd. of Educ. v Rowley,
 
 458 US 176, 179-181). The term "free appropriate public education” is defined, in part, as one provided in conformity with an Individualized Education Program (IEP) (20 USC § 1401 [a] [18]). An IEP is developed jointly by a school official, the child’s teacher and parents, and, where appropriate, the child. It details the special needs of a disabled child and the services which are to be provided to serve the individual needs of that child (20 USC § 1401 [a] [20];
 
 Burlington School Comm, v Massachusetts Dept, of Educ.,
 
 471 US 359, 368).
 

 New York State has adopted legislation intended to complement the Federal program and comply with its requirements
 
 (see,
 
 Education Law § 4401
 
 et seq.).
 
 Under New York’s statutory scheme, each school board is required to establish a Committee on Special Education (CSE) which must review, at least annually, all information relevant to each disabled child and recommend to the school board an appropriate special education program and placement
 
 (see,
 
 Education Law § 4402 [1] [b]). If the recommendation of the CSE is unacceptable to the parents of a disabled child, it may be reviewed. Under the process available at the time relevant to this case, a parent was entitled to a hearing by an impartial hearing officer who, following the hearing, would make a recommendation to the
 
 *604
 
 school board. The school board’s determination could then be appealed to the Commissioner of Education
 
 (see,
 
 Education Law § 4404 [1] [former (2)]).
 
 [2]
 

 II
 

 In this case, Jeremy’s problems apparently became evident in the third grade when he exhibited disruptive classroom behavior and received failing grades. He was referred by his third-grade teacher to the CSE of petitioner Northeast Central School District. In July 1985, the CSE classified Jeremy as "health impaired” and recommended an IEP which included placing Jeremy in a regular fourth grade class, with resource room education four times a week and counseling once a week. Although Jeremy’s parents expressed concern about his continuing academic and behavioral problems during 1985-1986, the CSE recommended no change in the IEP for the 1986-1987 school year, and Jeremy was advanced to the fifth grade. He received failing grades during the fall semester of fifth grade and his behavioral problems intensified. Accordingly, in February 1987 his parents removed him from Northeast’s district and enrolled him as a tuition student in the Pine Plains Central School District.
 

 The Pine Plains CSE classified Jeremy as "learning disabled” and developed a program for him in which he received counseling and instruction in his problem subjects in special education classes grouped with students of similar levels of ability, academic achievement and management needs. He was mainstreamed in the remainder of his subjects. Jeremy showed marked improvement within a few weeks at Pine Plains, and continued to improve throughout the 1986-1987 school year.
 

 In June of 1987, Jeremy’s parents requested that Northeast reimburse them for the tuition expenses they had incurred for sending Jeremy to Pine Plains. Northeast denied the request, contending that it could provide a program similar to that being offered at Pine Plains. After a hearing, the denial was upheld.
 

 On appeal the Commissioner of Education concluded that the Northeast program offered in the 1986-1987 school year was inappropriate for Jeremy’s needs and that the program
 
 *605
 
 provided by Pine Plains was appropriate, and continued to be appropriate during the 1987-1988 school year, despite the existence of a somewhat similar program offered by Northeast. He found that equitable considerations supported an award of tuition reimbursement and therefore ordered Northeast to reimburse Jeremy’s parents for tuition paid to Pine Plains from February 1987 through June 1987 and for the 1987-1988 school year. The Commissioner also ordered Northeast to reimburse the parents for transportation expenses incurred during the 1987-1988 school year.
 
 [3]
 
 Finally, the Commissioner denied the parents’ request for attorneys’ fees because he lacked the authority to award them.
 

 Northeast then instituted this article 78 proceeding to challenge the Commissioner’s decision. Supreme Court deferred to the Commissioner’s determination that Northeast’s recommended placement was inappropriate and that the program at Pine Plains was appropriate and held that he possessed the authority to order both tuition and transportation reimbursement. Accordingly, it dismissed the petition, but did so without ruling on the request for attorneys’ fees.
 

 The Appellate Division modified, concluding that the Commissioner had the authority to order tuition reimbursement, but finding that he had no authority to order reimbursement for tuition paid
 
 prior
 
 to the commencement of the review process. The court therefore deleted so much of the Commissioner’s determination as ordered reimbursement for tuition paid during the 1986-1987 school year.
 
 [4]
 
 The court interpreted Supreme Court’s dismissal of the petition, without costs, as a denial of the parents’ request for attorneys’ fees and found no abuse of discretion in that denial. The parties have filed cross appeals from the determination of the Appellate Division.
 

 IH
 

 The record supports the Commissioner’s determinations that (1) the Northeast IEP was inappropriate for Jeremy, (2) the
 
 *606
 
 Pine Plains program was appropriate, and (3) the equitable considerations favored granting the parents’ reimbursement request. Inasmuch as the evidence in the record provides a rational basis for the Commissioner’s determination our review powers are at an end unless the Commissioner lacked the authority to order reimbursement
 
 (see, Catlin v Sobol,
 
 77 NY2d 552, 561;
 
 Matter of Gundrum v Ambach,
 
 55 NY2d 872, 873). We conclude that he had such authority and that his retroactive reimbursement order should be upheld in its entirety.
 

 IV
 

 Petitioner contends that authority for the Commissioner to compel reimbursement is not to be found in State or Federal law.
 

 The relevant State statute, as it then read, provided:
 

 "The commissioner of education shall review and modify, in such cases and to the extent that the commissioner deems necessary, in order to properly effectuate the purposes of this article, any determination of the board of education * * * relating to the * * * selection of an appropriate special educational program or service and the failure to provide such program”. (Education Law § 4404 [former (2)].)
 

 Manifestly, this authorized the Commissioner to modify the school board’s selection of special education programs for its students. Inasmuch as a special education program may necessarily involve contracting with another school district for special services or programs where appropriate services are otherwise unavailable (Education Law § 4401 [2] [b]), the Commissioner clearly had the authority to modify the school board’s selection of a resource room special program and instead require the board to contract with Pine Plains for special services for Jeremy.
 

 The question remains whether this statutory power is sufficiently broad to permit the Commissioner to recognize the contract retroactively, thereby requiring Northeast to reimburse Jeremy’s parents for tuition and transportation expenses previously incurred. We believe it is.
 

 The policy goals underlying both the Federal and State statutes are broadly stated. The expressed congressional intent is to "assure that all children with disabilities have
 
 *607
 
 available to them * * * o
 
 free appropriate public education * * *
 
 to meet their unique needs” (20 USC § 1400 [c]). The State, to implement the Federal program and further its expressed purpose, established an elaborate program, supplemented by regulations of the Commissioner, to identify qualifying students and their needs, to review annually the efficacy of the education provided to each student, and to work toward meeting the physical and educational needs of children with handicapping conditions
 
 (see,
 
 Education Law §§ 4402, 4403).
 

 These goals and the manner in which they are to be implemented were considered by the Supreme Court in
 
 Burlington School Comm. v Massachusetts Dept. of Educ.
 
 (471 US 359,
 
 supra).
 
 It held that parents who unilaterally removed their child from an
 
 inappropriate
 
 program and placed the child in an
 
 appropriate
 
 program were entitled to receive retroactive tuition reimbursement. The Court reasoned that to hold otherwise would render the child’s right to a
 
 free
 
 appropriate education less than complete
 
 (Burlington School Comm. v Massachusetts Dept. of Educ., supra,
 
 at 370). Moreover, the interference with a free appropriate education could be severe, given the years that might elapse before the issuance of a final judicial decision on the merits of the IEP
 
 (Burlington School Comm. v Massachusetts Dept. of Educ., supra,
 
 at 370). An order for retroactive reimbursement "merely requires the [district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP”
 
 (Burlington School Comm. v Massachusetts Dept. of Educ., supra,
 
 at 370-371).
 

 The
 
 Burlington
 
 Court also explained that 20 USC § 1415 (e) (3), which provides that a child is to remain in current placement during the pendency of the hearing process, does not require a finding that parents who unilaterally remove their child during the hearing process waive any right to retroactive reimbursement. The provision means only that parents who unilaterally remove their child from an IEP do so at their own financial risk. If, upon review, it is determined that the original placement was appropriate, then the parents are barred from obtaining reimbursement
 
 (Burlington School Comm. v Massachusetts Dept. of Educ., supra,
 
 at 373-374).
 

 Burlington
 
 can be distinguished factually because there (1) the child was unilaterally removed from a public school and placed in a
 
 private
 
 school, and (2) a
 
 court,
 
 rather than the Commissioner, ordered tuition reimbursement (471 US 359,
 
 *608
 

 supra).
 
 Thus, the
 
 Burlington
 
 Court found explicit statutory authority for retroactive tuition reimbursement in 20 USC § 1415 (e) (2), which provides that a
 
 court
 
 shall, after hearing the relevant evidence, "grant such relief as the court determines is appropriate.” Nonetheless, the reasoning in the decision controls: where the child’s original placement was inappropriate and the alternative placement appropriate, reimbursement may be ordered if equitable considerations warrant it, even for parents who unilaterally removed their child from a public school’s IEP. As the Court noted, considering the purposes of the Education Act, Congress must have intended the broad power to grant "appropriate” relief "to include retroactive reimbursement to parents as an available remedy in a proper case”
 
 (Burlington School Comm. v Massachusetts Dept. of Educ., supra,
 
 at 370).
 

 The Commissioner’s power, as stated in Education Law § 4404 (former [2]), is similarly broad. He is to act "to the extent that [he] deems necessary, in order to properly effectuate the purposes of this article.” Given this broad power, and given the fundamental aim of providing disabled children with a free appropriate education, we conclude that the Commissioner was authorized not only to order Northeast to contract with Pine Plains for services for Jeremy, but also to make that order retroactive. Northeast had an obligation to provide Jeremy with a free appropriate public education. One way it could have done so was by contracting with Pine Plains back in February 1987, to provide appropriate services to Jeremy. By ordering reimbursement retroactive to February 1987, the Commissioner did no more than require Northeast to provide, retroactively, the free appropriate education it should have provided in the first place. Without the Commissioner’s action, Jeremy’s right to a free appropriate education could not be fully protected.
 

 The Federal statute provides that a "free appropriate public education” includes special education
 
 and
 
 related services (20 USC § 1401 [a] [18]) and it specifically states that "related services” includes transportation (20 USC § 1401 [a] [17]). Consequently, the Commissioner’s order properly included the retroactive transportation reimbursement requested by Jeremy’s parents.
 

 We find no merit to petitioner’s contention that the Commissioner’s authority to order reimbursement is limited because found in the provisions of Education Law § 4404
 
 *609
 
 (former [2]) relating to his general powers to review school district determinations. The ability to order retroactive reimbursement is necessary to ensure a child’s right to a free appropriate public education and it should not, therefore, be controlled by filing dates or administrative decisions. In a given situation, it may be necessary to order reimbursement retroactive to a date
 
 prior
 
 to commencement of the review process in order to fully protect the child’s right to a free public education. This is especially true where the child’s parents are not made aware of their ability to request an impartial hearing until months, or even years, after the child’s placement has been changed. Moreover, there is nothing in the statute to indicate that a limitation of the Commissioner’s authority to order reimbursement is warranted.
 

 Reimbursement rights, it should be remembered, are affected by equitable considerations. The statutes contemplate a joint effort to resolve a child’s placement satisfactorily. If commencement of the review process represents the first time the school board learns of any problems with the IEP it had designed for the child or represents the first opportunity to revise it, then a reviewing board could reasonably exercise its discretion to order reimbursement retroactive only to the commencement of the review process, based upon its assessment of the "equitable considerations * * * relevant in fashioning relief’
 
 (Burlington School Comm. v Massachusetts Dept. of Educ.,
 
 471 US 359, 374,
 
 supra).
 

 In this case, the Commissioner determined that the equitable considerations favored reimbursement retroactive to the date Jeremy was first enrolled as a tuition student at Pine Plains. He noted that, "[i]n the face of mounting evidence that [Jeremy] was not succeeding academically in the recommended resource room placement and that all efforts to address his behavioral problems in the CSE’s recommended program were ineffectual, [Northeast’s] CSE ignored the parent’s repeated requests to consider alternative placement options.” We find that the Commissioner properly considered equitable factors to determine that Jeremy’s parents should be reimbursed for the entirety of Jeremy’s enrollment at Pine Plains.
 

 V
 

 Finally, the matter must be remitted to Supreme Court to reconsider the parents’ request for attorneys’ fees. The
 
 *610
 
 Education Act provides that in any proceeding commenced under the provisions of the Act, "the court, in its discretion, may award reasonable attorneys’ fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party” (20 USC § 1415 [e] [4] [B]). The legislative history indicates that this provision is to be interpreted in a manner consistent with the interpretation given to the fee provisions under 42 USC § 1988
 
 (see,
 
 S Rep No. 99-112, 99th Cong, 2d Sess, reprinted in 1986 US Code Cong & Admin News 1798, 1803-1805;
 
 Abu-Sahyun v Palo Alto Unified School Dist.,
 
 843 F2d 1250, 1252). Accordingly, attorneys’ fees should be awarded unless special circumstances would render such an award unjust
 
 (Matter of Thomasel v Perales,
 
 78 NY2d 561, 567;
 
 Matter of Johnson v Blum,
 
 58 NY2d 454, 458). Because neither court articulated any "special circumstances” warranting the denial of attorneys’ fees, the case must be remitted to Supreme Court for a determination of whether any such special circumstances exist. If none do exist, then Jeremy’s parents should be awarded reasonable attorneys’ fees.
 

 VI
 

 Accordingly, the order of the Appellate Division should be modified, with costs to respondent Commissioner and respondents Hoffman, by reinstating the Commissioner’s determination in its entirety and remitting to Supreme Court for further consideration of the parents’ request for attorneys’ fees, and, as so modified, affirmed.
 

 Chief Judge Wachtler and Judges Kaye, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order modified, with costs to respondent Commissioner and respondents Hoffman, by reinstating respondent Commissioner’s determination in its entirety and remitting to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . Prior to October 1990, the Act was known as the Education of the Handicapped Act.
 

 [2]
 

 . Section 4402 (2) was amended in 1990 to permit appeal from a hearing officer’s determination to a State review officer.
 

 [3]
 

 . The Commissioner found respondents failed to request transportation expenses for the period February 1987 to June 1987.
 

 [4]
 

 . Jeremy’s parents requested reimbursement from Northeast in June 1987. The Appellate Division apparently considered this request to have commenced the review process because it upheld the reimbursement order as it applied to the entire 1987-1988 school year, and did not limit the order to tuition paid after December 1987. The court did not change the Commissioner’s order with respect to transportation because transportation reimbursement was only ordered for the 1987-1988 school year.