Aaron LAPP and Cindy Lapp,
Plaintiffs and Appellants,

v.

REEDER PUBLIC SCHOOL DISTRICT
NO. 3; Southwest Multi–District Spe-
cial Education Unit; and North Dakota
Department of Public Instruction, De-
fendants and Appellees.

Civ. No. 910421.

Supreme Court of North Dakota.

Oct. 1, 1992.

Jeff Rotering (argued), of Rotering Law Office, Hettinger, for plaintiffs and appellants.

Gary R. Thune (argued), of Pearce & Durick, Bismarck, for defendants and appellees.

JOHNSON, Justice.

Aaron and Cindy Lapp appeal from a district court judgment which affirmed an order of the Department of Public Instruction [Department] holding that the Lapps were not entitled to receive boarding care payments from the Southwest Multi–District Special Education Unit for their daughter, Lisa Lapp. We reverse the judgment of the district court and remand for consideration of the Lapps' request for attorney fees.

The parties have stipulated to the facts. Before the 1988–89 school year, Aaron and Cindy, and their two daughters, Lisa and Jennifer, lived within the boundaries of North Dakota's Southwest Multi–District Special Education Unit [Southwest]. Lisa, born in 1984, has "a profound sensori-neural hearing loss" and began attending the North Dakota School for the Deaf [NDSD] in Devils Lake during the fall of 1988. Lisa was most recently enrolled in the first grade at NDSD pursuant to an approved 1990–91 Individual Education Program [IEP]. During the 1988–89, 1989–90, and 1990–91 school years, Lisa lived with Cindy and Jennifer in Devils Lake. Jennifer is a seventh grader at Central Junior High School in Devils Lake and was listed as a resident student in the Devils Lake School District for purposes of foundation aid and tuition apportionment for the 1989–91 school years.

During these three years, Aaron, who is employed at the Knife River Coal Mine[1] near Scranton and provides most of the financial support for the family, has remained in the Southwest district, living most recently in Reeder, where he maintains his legal residence. During the summers of 1988, 1989, and 1990, and during most holiday school vacations, Cindy and the two girls have returned to the Southwest district to live with Aaron.

During the 1988–89 and 1989–90 school years, Cindy and the two girls lived in a rented apartment in Devils Lake and Aaron applied for and received boarding care payments for Lisa from Southwest. Before

---

1. The parties' stipulation refers only to the "Knife River Coal Mine near Scranton, North Dakota...." We assume that this is a reference to the Knife River Coal Mining Company.

the 1990–91 school year, Aaron and Cindy purchased a house in Devils Lake for Cindy and the two girls to live in. Southwest has denied Aaron's applications for boarding care payments for Lisa during the 1990–91 school year. It is undisputed that no registration certificate has been issued to Cindy or Aaron to qualify the Devils Lake house as a family boarding home and that no license has been issued to them to qualify the house as a foster family home or a group home. Cindy and Aaron have never been told that any certification or license was necessary to qualify for reimbursement.

Pursuant to provisions of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*, the Lapps requested a due process hearing before the Department to challenge Southwest's refusal to continue paying for boarding care for Lisa. Based on these stipulated facts, the hearing officer denied the appeal, determining that although Aaron "legally resides within Southwest," both Jennifer and Lisa had established residency within the Devils Lake School District. The hearing officer reasoned:

> "If the Lapps maintain that the family's residence is such that one sister, Jennifer, is residing within the Devils Lake Public School District, then their residence may be such that the other sister, Lisa, is residing within the Devils Lake Public School District for purposes of that district furnishing facilities. Accordingly, Aaron Lapp is not entitled to receive boarding care payments for Lisa Lapp from Southwest because boarding care is being provided by Cindy Lapp in the Lapp home in Devils Lake."

The hearing officer further ruled that Southwest could not make the boarding care payments because the Lapps were not in compliance with the registration requirements under Chapter 15–59.3, N.D.C.C.

The Lapps appealed to the district court, which affirmed the Department's decision on the residency issue. This appeal followed.

■ For purposes of these proceedings, the Department is an administrative agency subject to the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. *See* §§ 15–21–07 and 28–32–01(1)(q), N.D.C.C. Our review of an administrative agency decision involves a three-step process of determining whether the findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law. *Miller v. Crime Victims Reparations Board,* 448 N.W.2d 197, 199 (N.D.1989). In assessing whether the agency's findings of fact are supported by a preponderance of evidence, we determine only whether the agency reasonably made its factual determinations from the greater weight of all the evidence in the record. *Schiff v. N.D. Workers Compensation Bureau,* 480 N.W.2d 732, 734 (N.D.1992). We review the decision of the agency and look to the record compiled before the agency. *Redwood Village v. N.D. Dept. of Human Services,* 420 N.W.2d 333, 335 (N.D.1988).

■ Under our state constitution, all children in North Dakota have the right to a public school education. N.D. Const. Art. VIII, § 1. Our state constitution also guarantees "equal educational opportunity" to a handicapped child. *In Interest of G.H.,* 218 N.W.2d 441, 447 (N.D.1974). The school board of a public school district has a duty "[t]o establish for all children of legal school age residing within the district, a system of free public schools which shall furnish school privileges equally and equitably." Section 15–29–08(1), N.D.C.C.; *see also* N.D. Const. Art. VIII, § 2. Also, the federal government's Individuals with Disabilities Education Act delineates a scheme under which a state, in order to receive federal financial assistance, is required to effectuate a plan which fulfills the requirements of the Act and assures all children with disabilities the right to a "free appropriate public education." 20 U.S.C. § 1412(1); *Hendrick Hudson Dist. Bd. of Educ. v. Rowley,* 458 U.S. 176, 179–181, 102 S.Ct. 3034, 3037–3038, 73 L.Ed.2d 690, 73 L.Ed.2d 690 (1982). "'[T]he right to a free appropriate education' means that all

handicapped students have the right to special education and related services which must be provided at no cost to parents." Section 15–59–02.1, N.D.C.C.; *see also* 20 U.S.C. § 1401(a)(18).

In North Dakota, "related services" includes boarding care. Section 15–59–02.1, N.D.C.C., provides that "[i]n the case of handicapped students who require boarding care away from the family residence in order to receive special education and related services in an approved program, it is the intent of the legislative assembly that the instructional costs and costs of related services, including boarding care, be borne by state special education funds and school district funds." The Department is required to "reimburse local school districts for eighty percent of the costs of room and board paid on behalf of handicapped children placed in facilities outside their school district of residence for special education services not available within their school district of residence." Section 15–59–07.2, N.D.C.C.

■ With this constitutional and statutory background, we must find a clear basis for excluding payment of boarding care expenses on behalf of a child with a disability.

■ The parties agree that the applicable test for determining Lisa's residence for educational purposes is set forth in this court's decision in *Anderson v. Breithbarth*, 62 N.D. 709, 245 N.W. 483 (1932). *See also In Interest of G.H., supra,* 218 N.W.2d at 447–448. In *Breithbarth*, the court interpreted the phrase "residing in the district," contained in a statute, which declared all public schools free, open, and accessible to all school-aged children residing in the district.[2] The defendant school district refused to permit a child to enter a school in Wishek unless her tuition was paid because the school board believed she was not a resident of that district. The

girl's parents, who were former residents of the state, had become residents of South Dakota. After the father had deserted the family, the mother sent the child to live with her aunt and uncle in Wishek for the "sole purpose" of "furnish[ing]" a decent home for the girl and to lighten the financial burden of her mother." *Breithbarth, supra,* 245 N.W. at 484. Although the mother's parental rights and duties had not been terminated, for "all intents and purposes," the child had become "a member of the family of her aunt and uncle, and [was] treated as such." *Breithbarth, supra.*

The court noted that the terms "residence" and "legal residence" or "domicile" may have different meanings in determining various rights of individuals and that a "child may have a residence for school purposes distinct and separate from the domicile of the parent." *Breithbarth, supra,* 245 N.W. at 485. The court concluded:

> "The term 'residing in the district' means what it says—a child who makes its home in that particular district, whether with its parents, or with other persons, when that place is the only home it has, a place to which she comes and where she remains when not 'called elsewhere for labor or special or temporary purpose.'" *Breithbarth, supra,* 245 N.W. at 487.

The court, however, was careful to point out that its interpretation of the phrase "residing in the district" would not "permit[ ] any child to come into a school district merely for the purpose of obtaining school privileges." *Breithbarth, supra.* If that were the case, the court continued, the child would be considered a nonresident of the district for school purposes and tuition would have to be paid for the child. Because the girl did not come to live in Wishek merely for the purpose of going to the district's schools, but rather, came to become a member of her aunt and uncle's family, tuition was not required to be paid to the defendant school district.

---

2. The statute construed in *Breithbarth,* § 1343 of the 1925 Supplement to the 1913 Compiled Laws of North Dakota, is the predecessor of § 15–47–01, N.D.C.C. Although § 15–47–01 no longer contains the language "residing in the district," the phrase "residing within the dis-

trict," is presently found in § 15–29–08(1), N.D.C.C. The subsequent deletion of the phrase from § 15–47–01 has not affected the precedential value of *Breithbarth* in determining residence for educational purposes. *See In Interest of G.H.,* 218 N.W.2d 441, 447 (N.D.1974).

In this case, the hearing officer determined, and it cannot seriously be disputed, that "Lisa did move to Devils Lake solely to obtain schooling" at NDSD. It is also beyond dispute that if Southwest had suitable facilities within its district to educate Lisa, "she would no doubt still be living there." *In Interest of G.H., supra*, 218 N.W.2d at 448. Lisa returns, along with her mother, Cindy, and sister, Jennifer, to her father's home in the Southwest district when school is not in session. Under these undisputed facts and this court's decision in *Breithbarth*, Lisa is a resident of the Southwest district for educational purposes rather than a resident of the Devils Lake School District.

■ The hearing officer focused, erroneously, we believe, on Jennifer's attendance at junior high school in Devils Lake as a "resident student," reasoning that "if Jennifer is a resident of the Devils Lake Public School District, because of where she lives, then it follows that Lisa is also." However, we do not believe that Jennifer's residence for educational purposes is determinative of Lisa's residence. The Lapps have not sought boarding costs for Jennifer and her residence is therefore not at issue. In any event, the hearing officer appears to have recognized that Cindy, Jennifer, and Lisa are in Devils Lake solely because NDSD is the only place within the state where Lisa can receive a suitable education. The hearing officer determined that although "Jennifer has not moved in with her mother and her sister in Devils Lake purely for the purposes of obtaining school privileges in Devils Lake," "Lisa, along with her mother and sister, previously moved to an apartment in Devils Lake in 1988 so that Lisa could attend school at NDSD, through Southwest." Jennifer's being listed as a resident student in the Devils Lake School District for purposes of foundation aid and tuition, is, under these circumstances, irrelevant in determining Lisa's residence for educational purposes.

We conclude that, on this record, the agency could not reasonably have determined that Lisa is a resident of the Devils Lake School District. Rather, we conclude that Lisa's residence for educational purposes remains within the Southwest district.

Southwest also argues that because Lisa's approved 1990–91 IEP[3] makes no reference to boarding care as allegedly required by federal regulations [*see* 34 C.F.R. § 300.346], but refers to a "dormitory programming" component, Aaron and Cindy are not entitled to boarding care payments because NDSD "is a residential placement which provides both room and board at no cost to the parents." Although Lisa's Individualized Educational Program does include a "dormitory programming" component, dormitory programming is approved for only "5–6 hours/wk." The IEP indicates only that NDSD is the appropriate and least restrictive educational placement for Lisa. The hearing officer did not find this IEP helpful in determining the Lapps' right to boarding care payments, and neither do we.

■ The hearing officer also determined that the provisions of Chapter 15–59.3, N.D.C.C., barred payment of boarding care in this case. Section 15–59.3–03, N.D.C.C., provides:

> "*Public agency purchase of boarding home care for special education students.* No agency of state or local government may purchase or provide boarding home care for special education students unless the family boarding home:
>
> "1. Has obtained a registration certificate; or
>
> "2. If exempted from registration by subsection 1 or 2 of section 15–59.3–02, complies with all applicable standards and rules issued or adopted by the department."

Section 15–59.3–02, N.D.C.C., provides:

> "*Boarding home care for special education students—Registration required.*

---

3. Under § 15–59–02.1, N.D.C.C., the Department is required to "approve a contract for services based on an individualized education program developed for each handicapped student placed in a private school program or in programs outside the student's original special education unit." *See also* 20 U.S.C. §§ 1401(20), 1413(a)(11), and 1414(a)(5).

No person, partnership, voluntary organization, or corporation may establish or operate a family boarding home without first obtaining a registration certificate. The mandatory provisions of this section requiring registration do not apply when the boarding home care is provided in:

"1. The home of a relative.

"2. A home or institution under the management and control of the state or the public school board.

"3. A home furnishing 'foster care for children' as defined in subsection 1 of section 50–11–00.1."

Any person who violates these provisions is guilty of a class B misdemeanor. *See* § 15–59.3–11, N.D.C.C.

The Lapps contend that the registration requirements do not apply in this case because boarding home care for Lisa is provided in "[t]he home of a relative," *i.e.,* her mother. Section 15–59.3–02(1), N.D.C.C. For purposes of Chapter 15–59.3, N.D.C.C., however, " '[r]elative' means any person having the following relationship to the student by marriage, blood, or adoption: grandparent, brother, sister, stepparent, stepsister, stepbrother, uncle, or aunt." Section 15–59.3–01(7), N.D.C.C. Because the definition of "relative" does not expressly include a "parent," the hearing officer determined that "the statute does not intend to pay parents for providing room and board for their own child in cases where the child is residing with the natural parents, or parent...." Southwest acknowledges that Cindy could apply for a registration certificate so the Devils Lake house could become a registered family boarding care home. Southwest predicts, however, that "[s]uch an application is not likely to be favorably received, since it is

not the intent of ... Chapter 15–59.3, N.D.C.C., to include a parent's home as a boarding care home...."

Chapter 15–59.3, N.D.C.C., does not state that a natural parent cannot provide reimbursable boarding care for his or her child; it only fails to expressly exempt a natural parent from the registration requirements.[4] The purpose of Chapter 15–59.3 is to provide and ensure, through certification, "fit" homes for children who must live away from home for special education services. *See* Minutes of the Senate Committee on Social Welfare and Veterans Affairs, Senate Bill 2252, January 18, 1979; Minutes of the House Committee on Social Services and Veterans Affairs, Senate Bill 2252, March 8, 1979. We have examined the legislative history and have found no explanation of why certification should be required of a natural parent, but not of more distant relatives, in order to provide reimbursable boarding care when special education services are required outside of the child's home district.

■ Generally, a statutory definition which declares what a term means excludes any meaning that is not stated [*see Intern. Minerals & Chemical v. Heitkamp,* 417 N.W.2d 791, 793 (N.D.1987)], "so long as the prescribed meaning is not so discordant to common usage as to generate confusion." 2A *Sutherland Statutory Construction* § 47.07, at p. 152 (5th ed. 1992) [Footnote omitted.] By excluding certain relatives from the registration requirements, the legislature, it seems to us, intended to permit, approve and promote, whenever possible, the care of a child with family members rather than with strangers. *See Culmo v. Andrews,* 45 Misc.2d 954, 258 N.Y.S.2d 255, 256–257 (1964). In

---

4. Southwest contends that § 15–59–02.1, N.D.C.C., supports its argument that a natural parent was not intended to be eligible for reimbursement for providing a family boarding care home. Section 15–59–02.1, N.D.C.C., defines the right to special education and related services which must be provided "at no cost" to the parents as

"specifically designed instruction provided without charge but does not preclude expenses normally incurred or charged to parents of nonhandicapped children. Parents

will assume such costs for a handicapped child as they would if the child was not handicapped."

We have determined that Lisa's residence for educational purposes is in the Southwest district rather than in the Devils Lake School District. We decline to equate boarding care costs for a child who must relocate during the school term to a foreign district where the only suitable educational facility exists as "expenses normally incurred or charged to parents of nonhandicapped children."

our view, the unexplained exclusion from the statutory definition of a natural parent, who is a child's closest "relative," is not only discordant to common usage but tends to defeat a major purpose of the legislation. It would be an anomaly to hold that Cindy's boarding of Lisa, her natural child, required her to have a registration certificate for that purpose and that her failure to have a certificate would constitute a class B misdemeanor because Cindy is not a "relative" as defined by statute. *See Culmo, supra.* We will not assume that the legislature intended a result so unjust and contrary to logic. *Witthauer v. Burkhart Roentgen, Inc.,* 467 N.W.2d 439, 445 (N.D.1991). Under these circumstances, we conclude that Cindy is a "relative" for purposes of Chapter 15–59.3, N.D.C.C., and need not be registered or licensed to provide boarding care for her natural child, Lisa.

In any proceeding commenced under the provisions of the Individuals with Disabilities Education Act, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). *See, e.g., Community Consol. Sch. D. v. Bd. of Educ.,* 216 Ill. App.3d 90, 159 Ill.Dec. 581, 576 N.E.2d 250 (1991); *Northeast Cent. School Dist. v. Sobol,* 79 N.Y.2d 598, 584 N.Y.S.2d 525, 595 N.E.2d 339 (1992); Annot., *Award of attorneys' fees pursuant to § 615(e)(4) of the Education of the Handicapped Act (20 USCS § 1415(e)(4)), as amended by the Handicapped Children's Protection Act of 1986,* 87 A.L.R.Fed. 500 (1988). Because the Lapps have become a prevailing party through this appeal, we remand to the district court for consideration of their request for attorney fees.

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court for further proceedings.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and LEVINE, JJ., concur.

LEVINE, Justice, concurring.

I agree with the result and the residency analysis of the majority. I write to rationalize our interpretation of Chapter 15–59.3, NDCC.

By omitting "parents" from those exempt from family boarding-home-certification requirements, the legislature may well have decided that it was not going to be in the business of assisting parents to build equity in home ownership under the guise of boarding-care payments. However, if in fact that's what the legislature intended, the legislation to implement that intent is ambiguous. While our interpretation of these statutes may create law of unintended consequences, the legislature can overcome our mistaken view by amending the statutes to effect its intended consequences. Until then, I agree that, given the strong public policy of this State for providing equal educational opportunity for all children, we have properly resolved any doubt in favor of the child. I, therefore, concur.