Aaron LAPP and Cindy Lapp,
Plaintiffs and Appellants,

v.

**REEDER PUBLIC SCHOOL DISTRICT NO. 3; Southwest Multi–District Special Education Unit; and North Dakota Department of Public Instruction; Defendants and Appellees.**

Civ. No. 950217.

Supreme Court of North Dakota.

Feb. 28, 1996.

 

Jeff Rotering, of Rotering Law Office, Hettinger, for plaintiffs and appellants.

Gary R. Thune, of Pearce & Durick, Bismarck, for defendants and appellees.

SANDSTROM, Justice.

Aaron and Cindy Lapp appeal from an amended judgment denying their motion to amend a prior judgment ordering Reeder Public School District No. 3, Southwest Multi–District Special Education Unit, and North Dakota Department of Public Instruction to provide them boarding care reimbursement for their daughter, Lisa Lapp, while she attends the North Dakota School for the Deaf in Devils Lake. Because the Lapps have not presented their claim for increased reimbursement through appropriate administrative proceedings as contemplated by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.*, we conclude the trial court did not abuse its discretion in refusing to amend the judgment as they requested. We therefore affirm.

I

Lisa Lapp has a hearing disability and falls within the term "children with disabilities" under the IDEA. *See* 20 U.S.C. § 1401(a)(1)(A). In *Lapp v. Reeder Public School Dist. No. 3*, 491 N.W.2d 65 (N.D. 1992), this Court held Lisa Lapp was a resident of the Southwest Special Education Unit for educational purposes, rather than a resident of the Devils Lake School District where she lived with her mother while attending the School for the Deaf, and concluded the defendants were required to make boarding care payments to the Lapps. In their motion for judgment consistent with this Court's mandate, the Lapps requested "the amount appropriate under current North Dakota state law for boarding care reimbursement...." On February 1, 1993, a judgment on mandate was issued, decreeing the defendants reimburse the Lapps

"$4136.00, which is the boarding care reimbursement at the rate of 20 times $9.40 per day, for a computed per monthly reimbursable rate of $188.00 for a period of 22 school months during that period from September 1, 1990 through December 31, 1992."

The amount was computed under the boarding care reimbursement schedule in the Department of Human Services Manual, Service Chapter 621–05–05–09. The judgment also ordered the defendants to continue the boarding care payments "so long as ... Lisa Lapp is satisfying existing administrative requirements for receipt of such payments," and awarded the Lapps reasonable attorney fees.

On February 15, 1994, Aaron Lapp signed Lisa Lapp's annual Individual Education Program for the year ending February 15, 1995. The Individual Education Program contained a notation the "Lapps will continue to receive boarding care at a rate of $9.40 per school day pending petition of court." On December 5, 1994, the Lapps moved to amend the judgment on mandate to increase the amount of reimbursement. The Lapps sought:

"actual costs incurred for housing in ... Devils Lake for so long as their family residence is at a location other than Devils Lake ... and for so long as Lisa Lapp remains in attendance at the North Dakota School for the Deaf in Devils Lake. The current actual cost of housing for Lisa Lapp in Devils Lake is $665.10 per month. Alternatively, the [Lapps] request that monthly boarding care reimbursement be increased to $569.00 per month, which is an approximate average cost of housing in Devils Lake at the present time...."

The motion was accompanied by an affidavit of Aaron Lapp itemizing the monthly house, electricity, heat, water, sewer, garbage, cable television and telephone pay-

ments. The Lapps also requested and were granted a hearing, where they presented the affidavit of a Devils Lake realtor estimating the average cost of housing in the area.

The Lapps, although not seeking retroactive reimbursement before February 1994, argued the boarding care reimbursement amount ordered in the original judgment on mandate "is not appropriate or realistic at the present time." Because the Lapps were currently incurring monthly housing costs in excess of the boarding care rates, and because "Lisa Lapp should be provided with a free appropriate education," the Lapps argued they were entitled to increased monthly boarding care reimbursement. The Lapps also sought attorney fees and costs under 20 U.S.C. § 1415(e)(4)(B) and N.D.C.C. § 15–59–10. The defendants opposed the motion.

The trial court denied the motion and request for attorney fees. The court noted the Lapps, by seeking boarding care payments inconsistent with established rates, sought "to raise by motion a new issue not previously raised in this litigation, that of the correct and appropriate level of boarding care payments." The trial court pointed out the absence of legal precedent cited by the Lapps for their request, and noted the Lapps had consistently taken the position throughout the litigation they were not challenging the established rate. The trial court further reasoned the motion was untimely under N.D.R.Civ.P. 59. The court did amend the judgment, however, to incorporate into the decree periodical adjustments made in the boarding care reimbursement rates. This resulted in an increase of monthly reimbursement from $188 to $194.60.

The trial court had jurisdiction under N.D. Const. Art. VI, §§ 1 and 8, and N.D.C.C. § 27–05–06. The Lapps' appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, §§ 1 and 2, and N.D.C.C. § 28–27–01.

## II

■■ A motion to amend a judgment is not timely if made more than 10 days after notice of entry of judgment. N.D.R.Civ.P. 59(j). Nevertheless, an untimely Rule 59(j) motion may be treated by the court as a motion to reopen the judgment under N.D.R.Civ.P. 60(b), if the motion seeks relief available under that rule, i.e., modification of the judgment. *Schnell v. Schnell*, 252 N.W.2d 14, 17 (N.D.1977). Because untimeliness was only one factor in the trial court's decision, we conclude the trial court treated the motion as one for relief from judgment under N.D.R.Civ.P. 60(b). A decision on a motion to amend a judgment under either N.D.R.Civ.P. 59 or 60 rests in the sound discretion of the trial court and will not be reversed on appeal absent a manifest abuse of discretion. *Heller v. Heller*, 367 N.W.2d 179, 183 (N.D.1985). The trial court did not abuse its discretion in denying the Lapps' motion in this case.

The IDEA provides federal funds to assist state and local agencies in educating children with disabilities, and conditions funding on a state's compliance with extensive goals and procedures. *See Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982). In order to receive federal financial assistance, a state must develop a plan which assures all children with disabilities "the right to a free appropriate public education." 20 U.S.C. § 1412(1). *See Lapp* at 67. Besides the substantive goals, the IDEA also imposes extensive procedural requirements on states receiving federal funds under its provisions. *See Rowley*, 458 U.S. at 181–183, 102 S.Ct. at 3038.

An Individual Education Program for the child must be prepared at a meeting between a qualified representative of the local educational agency and the child's teacher and parents, which must be reviewed, and if appropriate, revised, at least annually by local or regional educational agencies. *See* 20 U.S.C. §§ 1401(18) and (20); 1413(a)(11); and 1414(a)(5). The IDEA also gives parents the right to challenge in administrative and court proceedings a proposed Individual Education Program with which they disagree. *See Burlington School Committee v. Dept. of Educ.*, 471 U.S. 359, 361, 105 S.Ct. 1996, 1998, 85 L.Ed.2d 385 (1985).

■ After parents are notified of any proposed change in "the identification, evalua-

tion, or educational placement of the child or the provision of a free appropriate public education to the child," they are permitted to bring a complaint about "any matter relating to" the appropriateness of the evaluation and educational plan. 20 U.S.C. § 1415(b)(1)(C) and (E). *See Florence County School Dist. Four v. Carter*, 510 U.S. 7, ——, 114 S.Ct. 361, 363, 126 L.Ed.2d 284 (1993). These complaints must be resolved at "an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(b)(2). An appeal to the state educational agency must be provided if the initial hearing is held at the local or regional level. 20 U.S.C. § 1415(c). "Any party aggrieved by the findings and decision" of the state administrative agency

> "shall have the right to bring a civil action with respect to the complaint presented ... which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

20 U.S.C. § 1415(e)(2). *See also* N.D.C.C. § 15–59–10.

Although the IDEA allows a court after administrative proceedings to "hear additional evidence" and requires the court to base its decision on the "preponderance of the evidence," this does not mean the administrative process is a meaningless step in the procedure outlined by Congress that can be circumvented at the whim of the aggrieved party. The United States Supreme Court explained in *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051:

> "[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought. The fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings."

An administrative hearing and decision is an important step in an aggrieved party's challenge to an Individual Education Program.

For this reason, attempts to "leapfrog" the administrative process are viewed dimly by courts, and while "the legislative history of the Act reflects the understanding that exhaustion is not a rigid requirement," "litigants are discouraged from weakening the position of the agency by flouting its processes...."[1] *Ezratty v. Com. of Puerto Rico*, 648 F.2d 770, 774 (1st Cir.1981) (footnote omitted). For example, in *Leonard by Leonard v. McKenzie*, 869 F.2d 1558, 1563 (D.C.Cir.1989) (footnote omitted), the court refused to address an IDEA issue not raised before the hearing examiner because "it would be both unfair and unwieldy to overturn the hearing officer's decision on grounds that she had no opportunity to consider or evaluate." Also, in *Roland M. v. Concord School Committee*, 910 F.2d 983, 997 (1st Cir.1990) (footnote omitted), *cert. denied*, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991), another IDEA case, the court ruled "[w]here parties could have, but purposely chose not to, call certain witnesses at the administrative hearing, the district court has discretion to exclude the testimony on judicial review," and cautioned, "[i]n the absence of special circumstances, courts should ordi-

---

1. We do not suggest the attempt to amend the judgment in this case is a deliberate effort to bypass the administrative process. Counsel for the Lapps informed us during oral argument administrative proceedings were initiated, but were then informally terminated. The record on appeal contains no administrative record.

narily exercise that discretion in favor of excluding the belatedly offered evidence."

 In this case, the Lapps sought to amend the judgment, arguing the amount of reimbursement is no longer sufficient. This claim has never been presented to an administrative hearing officer. Nor is it the type of claim that dispenses with the exhaustion of administrative procedures requirement because exhaustion would be "futile." *See Ezratty*, 648 F.2d at 774 n. 4, and cases collected therein; *see also Tooley v. Alm*, 515 N.W.2d 137, 139 (N.D.1994) ("the requirement for exhaustion of remedies is well established for administrative decisions"); *Shark Bros., Inc. v. Cass County*, 256 N.W.2d 701, 705 (N.D.1977) (listing exceptions to exhaustion). The amount of the claimed increase in reimbursement, if any, necessary to provide Lisa Lapp with a "free appropriate public education" is an issue uniquely amenable to the administrative process. *Compare Zobrest v. Catalina Foothills School Dist.*, 509 U.S. 1, 4 n. 2, 113 S.Ct. 2462, 2464 n. 2, 125 L.Ed.2d 1 (1993) (parties agreed exhaustion would be futile when issue was whether providing sign-language interpreter to accompany deaf student to Roman Catholic high school would violate First Amendment establishment clause).

Congress prescribed a two-tier model for resolving these disputes. Resolving the Lapps' request without the benefit of administrative reflection and decision undercuts the statutory role of the administrative process prescribed by Congress.

Because the Lapps used an inappropriate procedure under the IDEA for presenting their claim for higher boarding care reimbursement, we conclude the trial court did not abuse its discretion in refusing to amend the judgment as the Lapps requested. *See A.W. By & Through N.W. v. Northwest R–1 Sch. Dist.*, 813 F.2d 158, 165 (8th Cir.), *cert. denied*, 484 U.S. 847, 108 S.Ct. 144, 98 L.Ed.2d 100 (1987) (trial court did not abuse discretion in denying motion to amend judgment where Individual Education Program was subject to periodic review and could be challenged through administrative and judicial proceedings under IDEA). We express

no opinion on the merits of the Lapps' request.

### III

 The Lapps were not prevailing parties. The trial court therefore did not abuse its discretion in refusing to award them attorney fees and costs for these proceedings under 20 U.S.C. § 1415(e)(4)(B) and N.D.C.C. § 15–59–10.

### IV

The amended judgment is affirmed.

VANDE WALLE, C.J., and MESCHKE, LEVINE and NEUMANN, JJ., concur.