OPINION OF THE COURT
Eng, P.J.
Jonathan Begley, a nine-year-old autistic boy who suffered from asthma as well as allergies to a wide range of foods and substances, was enrolled in the summer of 2004 as a student in The Forum School located in Waldwick, New Jersey. His placement in this private educational facility for special needs children came as the result of an Individualized Education Program prepared by his local Staten Island school district, which directed that, in light of his history of severe asthma and allergies, he be provided with such exceptional services as a registered nurse to accompany him while he traveled to and from school and monitor him throughout the school day. Jonathan’s mother interviewed and selected several nurses to share the duties of caring for the child on school days, and the New York City Department of Education (hereinafter the DOE) paid for the nurses’ services. Jonathan had just finished lunch at school on the afternoon of July 21, 2004, when he began to experience difficulty in breathing. Believing that Jonathan was having an asthma attack, the nurse who accompanied him to school that day administered Proventil to the child through his nebulizer. However, when Jonathan’s condition did not improve, his nurse realized that he was having a severe allergic reaction, and administered epinephrine by injecting him with an “epipen.” School personnel called 911, and the school nurse assisted Jonathan’s nurse as she attempted to alleviate his respiratory distress by injecting him with two more epi-pens. When an ambulance arrived, paramedics transported Jonathan to a nearby hospital, where he died two days later. Although the allergen which triggered Jonathan’s reaction has never been conclusively determined, his parents, the plaintiffs Karen Begley and Brian Begley, suspect that it may have been caused by Jonathan’s exposure to blueberries during a classroom lesson that morning.
Following the death of their son, the plaintiffs commenced this action against, among others, the DOE, The Forum School, and Jonathan’s nurse, Michelle Timothy, alleging that they negligently allowed Jonathan to be exposed to a substance to which he was allergic, and failed to properly respond when he began exhibiting symptoms of an anaphylactic (that is, a severe *10 allergic) reaction. After extensive discovery, the DOE, The Forum School, and Timothy separately moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them. The Supreme Court (Aliotta, J.) granted the DOE’s motion in its entirety, concluding that it could not be held liable on a negligent supervision theory because Jonathan was not in its physical custody at the time of his injury, and that it could not be held vicariously liable for Timothy’s alleged negligence because she was an independent service provider (29 Misc 3d 579 [2010]). However, the Supreme Court denied the respective motions of The Forum School and Timothy for summary judgment dismissing the complaint and all cross claims insofar as asserted against them except to the extent of dismissing the cause of action to recover punitive damages. For the reasons that follow, we conclude that the Supreme Court properly granted the DOE’s motion, and we take this opportunity to clarify the extent of the DOE’s duty to supervise a child who is not in its physical custody. We also conclude that the motions of The Forum School and Timothy should have been granted in their entirety.
I
Jonathan Begley, the child whose tragic death is at the center of this litigation, was born on January 10, 1995, the second of the plaintiffs’ two children. Jonathan first exhibited symptoms of asthma at the age of 10 months, when he started to wheeze. The family pediatrician prescribed Proventil, administered through a nebulizer, for use during asthma attacks. When Jonathan was about a year old, a pediatric immunologist began testing him for various allergies. The first round of testing determined that Jonathan was allergic to milk, eggs, wheat, soy, and gluten. As Jonathan grew older, he also developed food allergies to tree nuts and rye. He was further determined to be allergic to a number of other substances, including dust mites, animal dander, flowers, cigarette smoke, perfume, and certain soaps and hand creams. In addition to his health problems, when Jonathan was about two years old, he was diagnosed as autistic.
In the summer of 2001, when Jonathan was six, his local School District’s Committee on Special Education acknowledged, during the course of a hearing, that it was unable to provide him with an educational program that would meet both his educational and medical needs. The plaintiff parents located a *11 placement for Jonathan at The Forum School in Waldwick, New Jersey, and the District concurred that The Forum School, which specializes in the education of disabled students, would be an appropriate setting for Jonathan. In accordance with the hearing officer’s directive, on July 24, 2001, the Committee on Special Education prepared an Individualized Education Program (hereinafter IEP), which called for Jonathan to attend The Forum School, and have a registered nurse to accompany him while he traveled to and from school on a bus dedicated to his sole use, as well as to monitor his condition throughout the school day. The 2001 IEP noted that Jonathan was allergic to all dairy, wheat, gluten, eggs, bread, crackers, and yogurt, and that due to his extreme allergies, “an epi-pen must be present at all times.” An updated IEP prepared in 2004 stated that Jonathan was severely allergic to “wheat, gluten, eggs, all dairy, perfume,” that he required “nursing services to administer a nebulizer for asthma two to three times a week,” and should have two epi-pens “present at all times.”
Jonathan entered The Forum School in September 2001. The DOE paid his tuition at the school, and also paid for the cost of transportation and nursing care. The nurses who shared the duty of accompanying Jonathan to school and monitoring his medical condition throughout the school day were interviewed and chosen by his mother, the plaintiff Karen Begley. The plaintiff mother packed lunch and snacks for Jonathan to take to school each day, and also prepared a medical bag for Jonathan that contained a portable nebulizer and all of his medications, including Proventil, Benadryl, and four epi-pens. To alert the school staff and Jonathan’s nurses to potential allergens, the plaintiff mother prepared laminated cards which indicated that Jonathan had severe allergies to dairy products, eggs, and foods containing these ingredients, and that ingesting or touching these foods would cause an anaphylactic reaction. In addition, she provided the nurses and the school with a letter from Jonathan’s physician advising that he had severe asthma and life threatening food allergies, and setting forth a “partial list” of his allergies. The physician’s letter noted that “all dairy products,” eggs, and tree nuts would cause anaphylaxis, which should be treated by injecting with an epi-pen, to be repeated in 15 minutes, and, if conscious, the administration of liquid Benadryl. The letter further directed “[g]ive Proventil via nebulizer for wheezing.”
Despite Jonathan’s severe asthma and allergies, during the nearly three-year period that he attended The Forum School, he *12 was able to experience some of the normal joys of childhood by participating in activities which included swimming in the school pool with other children, playing basketball, and going on the swings during recess. From the time he entered The Forum School in September 2001 through the end of the spring semester in 2004, Jonathan’s private nurses sat inside the classroom next to him. However, in the spring of 2004, Jonathan’s teacher expressed concern that one of the nurses was “hovering over” Jonathan, impeding his development of independence. As a result, at the beginning of the summer 2004 semester, a new policy was implemented requiring the nurses to sit in the hallway outside Jonathan’s classroom. From this vantage point, the nurses were still able to see Jonathan, who was about five feet away. The defendant nurse, Michelle Timothy, recalls that at the time this seating policy was implemented, the teacher assigned to Jonathan’s class for the 2004 summer session assured her that she could enter the classroom if she needed closer access to Jonathan, and that she usually did so about once a day.
Jonathan suffered the severe reaction that ultimately resulted in his death on July 21, 2004. That morning, his teacher, Ann Schwartzstein, noticed that Jonathan was a little red in the face and a little agitated, but he “returned to normal very quickly,” and went to gym class with his classmates. After the children returned from gym, Schwartzstein conducted a “multi-sensory” lesson on the State of Maine, reading the children a book called Blueberries for Sal, and displaying a basket of blueberries to make the story come alive for them. Both Schwartzstein and Timothy, the nurse who accompanied Jonathan to school that morning, agree that Jonathan was seated at least five feet away from the blueberries, and they did not see him touch or handle the blueberries in any way. The next scheduled activity for the children after the lesson was lunch, which took place in the school lunchroom between 11:45 a.m. and 12:15 p.m.
As the lunch period came to a close and Jonathan finished eating, he and Timothy got up to empty their trays into the garbage. As they were returning to the lunch table, Jonathan told Timothy that he was having trouble breathing and asked for his “nebi.” Timothy checked Jonathan’s breathing with a stethoscope and detected wheezing. Initially believing that Jonathan was experiencing an asthma attack triggered by agitation, Timothy poured a vial of Proventil into his nebulizer and began to administer it. She then walked Jonathan back to his *13 classroom so that she could assess him in a quiet environment. When Jonathan’s breathing did not improve and he became increasingly agitated, Timothy gave him another Proventil treatment, and administered an epi-pen. She administered a second epi-pen about 10 to 15 minutes later, and a third epi-pen at some point thereafter. The plaintiffs allege that the first epipen used, which came from Jonathan’s own medical bag, had an expiration date of December 2003, and was thus expired on the date it was administered.
The Forum School’s nurse, Elizabeth Golub, received a call summoning her to Jonathan’s classroom sometime between 12:15 and 12:20 p.m. Golub arrived in the classroom about a minute later, accompanied by The Forum School’s director, Dr. Steven Krapes. At that point, Timothy was in the process of giving Jonathan a nebulizer treatment. Jonathan’s face was red, and he was trying to pull off the nebulizer mask. When Timothy told Golub that Jonathan was “having a reaction to something,” Golub contacted the school office manager via intercom, and instructed her to call 911 immediately. According to local police department records, the request for an ambulance was made at 12:24 p.m. Golub then helped stabilize Jonathan’s position so that Timothy could administer the second epi-pen. According to Golub, she and Timothy also decided to attempt to administer oxygen to Jonathan because they “felt [they] needed to do anything [they] could do to try to help him get some air.” Dr. Krapes assisted by attempting to calm Jonathan down, and holding Jonathan so that the nurses could place a mask on his face. According to Dr. Krapes, a police officer who responded to the school’s 911 call before medical personnel arrived stated that the ambulance had been delayed because three other calls for medical assistance had been made at the same time. Dr. Krapes estimated that an ambulance first arrived at about 12:40 p.m., about 20 minutes after the school contacted 911. Once paramedics arrived at the scene, they took over Jonathan’s care, intubating him and administering medication through an IV Jonathan was transported to Valley Hospital, where he died two days later. Although Jonathan’s death certificate initially indicated that he died of natural causes, the plaintiff mother asked the hospital to amend the certificate to indicate the specific cause of death. As amended, the death certificate lists the cause of Jonathan’s death as “Hypoxic Ischemic Encephalopathy, Acute Anaphylasix, and Severe Atophy.”
*14 II
Eleven months after the death of their son, the plaintiffs, individually and as the administrators of Jonathan’s estate, commenced this action asserting claims sounding in negligent supervision against the DOE and The Forum School, and claims sounding in both nursing malpractice and negligent supervision against Timothy.[1] Among other things, the plaintiffs alleged that the DOE and The Forum School had negligently allowed Jonathan to be “exposed to agents known and/or unknown to cause a serious allergic reaction,” had failed to administer aid to Jonathan “pursuant to the protocol specifically known to defendants,” and had failed to timely contact emergency rescue services. The plaintiffs also asserted that the DOE and The Forum School had denied Jonathan’s right under his IEP “to have the nurse specifically assigned to him in his presence throughout the school day.” The plaintiffs further charged that Timothy had negligently failed to timely diagnose the true nature of Jonathan’s condition, had failed to properly manage and treat his condition, and had failed to provide him with a safe and sterile lunch area and protect him from injury while he was under her care and control. Extensive discovery was conducted, including depositions of the plaintiff parents, Timothy, a representative of the DOE, teacher Ann Schwartzstein, school nurse Elizabeth Golub, Dr. Krapes, and three of Jonathan’s treating physicians.
ra
After discovery was completed, The Forum School moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against it. In support of its motion, the school argued that the testimony adduced during pretrial depositions demonstrated that it provided Jonathan with a safe environment, and that there was no evidence that Jonathan was exposed to his known allergens or anything else that could reasonably have been anticipated to be harmful. More specifically, the school submitted that it complied with Jonathan’s IEP *15 by allowing his private duty nurse to observe him at all times, and ensuring that all staff was aware that Jonathan was to eat only food brought from home. The school further maintained that its teacher-to-student ratio was “beyond reasonable,” and added that “[s]hort of completely isolating Jonathan, it is difficult to conceive of any precaution or measure that could have prevented this unfortunate incident.” The school also contended that there was no evidence that its alleged negligence proximately caused Jonathan’s anaphylactic reaction, stressing in this regard that the cause of the reaction remained unknown. The school additionally noted that while the plaintiffs claimed that Jonathan’s anaphylactic reaction was caused by his exposure to blueberries, the deposition testimony of the plaintiff mother revealed that Jonathan had never actually been tested for an allergy to blueberries.
In opposition to the motion, the plaintiffs argued that The Forum School was negligent in its supervision and monitoring of Jonathan both before and after he suffered an anaphylactic reaction. According to the plaintiffs, the school’s negligence included preventing Timothy “from discharging her professional duties to monitor and assess Jonathan’s medical condition,” resulting in her failure to ensure that Jonathan did not come into contact with life-threatening food allergens. In addition, the plaintiffs asserted, for the first time in the litigation, that the school was vicariously liable for the “medical malpractice” of school nurse Elizabeth Golub, which included her alleged failure to discharge an appropriate degree of professional care in attempting to treat Jonathan’s anaphylactic reaction.
In support of their position, the plaintiffs relied upon the affidavit of Karen McDonald, a registered nurse certified in oncology, who averred that she had been specifically trained in how to recognize, manage, and treat allergic reactions, and in emergency response to anaphylaxis. Based on her review of evidence including deposition testimony, medical records, and Jonathan’s death certificate, McDonald opined that Golub deviated from good and accepted standards of nursing practice by failing to provide Jonathan with a safe environment, and failing to follow his physician’s protocol when he exhibited signs and symptoms of anaphylaxis. More specifically, McDonald maintained that it was a departure for Golub to have failed to provide a student with known severe food allergies with a “disinfected lunch environment.” In her view, Golub should have created a protocol to manage Jonathan’s environment which included ensuring *16 that his private nurse, Michelle Timothy, disinfected the school’s microwave oven before using it to heat Jonathan’s lunch, disinfected Jonathan’s place mat, which was stored with the place mats of other children, and disinfected the lunch table.
Focusing on the day that Jonathan suffered the anaphylactic reaction, McDonald submitted that “the record evidence reflects, that Jonathan Begley was exposed to a substance which he was allergic to, likely blueberries, beginning at approximately 10:00 a.m.,” while he was under Timothy’s care.[2] Based in part on her belief that Jonathan had been exposed to a known allergen, McDonald opined that when the child exhibited symptoms of wheezing, increased respirations, redness in the face, and agitation on July 21, 2004, at approximately 12:20 or 12:25 p.m., a reasonably prudent nurse should have immediately recognized that he was having an anaphylactic reaction, and followed the protocol for responding to an anaphylactic reaction prescribed by Jonathan’s pediatrician. In support of her opinion that both Golub and Timothy failed to follow the protocol set forth by Jonathan’s pediatrician for an anaphylactic reaction, McDonald claimed that 24 minutes elapsed between the time Jonathan first began exhibiting symptoms of anaphylaxis and the call to 911 at 12:24 p.m., and that Benadryl should have been administered before an epi-pen. Furthermore, the first epipen administered had expired seven months earlier, and thus there was a “substantial likelihood” that “the first epi-pen administered was non-effective or had little effect.” In McDonald’s opinion, Golub had an independent obligation to act in accordance with sound nursing practice despite Timothy’s presence, and Golub’s departures included permitting Timothy to administer an expired epi-pen, failing to alert emergency services in a timely manner, and failing to ensure that Jonathan’s airway remained clear prior to the arrival of paramedics.
In reply, The Forum School urged that the errata sheets which attempted to alter the plaintiff mother’s deposition testimony by adding blueberries in the list of substances that Jonathan was allergic to should be disregarded, both because the errata sheets had been submitted well beyond the 60-day deadline for *17 correcting deposition testimony imposed by CPLR 3116 (a), and because the plaintiff mother had offered no explanation for making a substantive change in her testimony. In addition, the school disputed a number of the factual assertions underlying McDonald’s opinion that Golub departed from sound nursing practice, including the claim that 24 minutes elapsed between the time Jonathan first began exhibiting symptoms of anaphylaxis and the 911 call.
IV
Shortly after The Forum School’s motion was filed, the defendant Michelle Timothy also separately moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against her, arguing that she had appropriately provided Jonathan with emergency respiratory care under the most challenging of circumstances, and had not departed from good and accepted standards of nursing care. To support her claim, Timothy relied upon the affidavit of her expert, Maureen Walls Sileo, a registered nurse with training in emergency care. Sileo averred that based upon her review of evidence including deposition testimony, Timothy did not depart from good and accepted nursing practice while providing care to Jonathan on July 21, 2004. In support of her conclusion, Sileo opined that as a private nurse, Timothy had no duty to insulate or guard Jonathan from exposure to substances not known to cause an allergic reaction in that child. She also emphasized that neither blueberries or berries of any kind were included in a written list of Jonathan’s known allergens provided by his physician.
Further, Sileo submitted that when Timothy observed Jonathan becoming upset and demonstrating signs of shortness of breath after finishing lunch at about 12:20 p.m., she properly recognized the signs of respiratory distress and timely and properly administered a Proventil treatment via nebulizer in the lunchroom. In her opinion, Timothy’s impression that Jonathan was having an asthma attack was in accordance with accepted nursing practice and consistent with Jonathan’s underlying medical condition, medical history, and symptoms. Sileo further opined that when Timothy observed Jonathan’s condition worsening despite the initial Proventil treatment, she properly administered a second Proventil treatment while appropriately developing a differential impression of anaphylaxis. In addition, Timothy properly administered an epi-pen, which was appropriate treatment for suspected anaphylaxis, and *18 properly requested that 911 be called after the administration of the epi-pen. Furthermore, according to Sileo, the administration of liquid Benadryl was contraindicated in a child experiencing respiratory distress due to the risk of aspiration.
Sileo additionally opined that the administration of a second epi-pen when Jonathan’s condition continued to worsen was also appropriate, and that under the circumstances presented, Timothy was not required to wait 15 minutes between the administration of epi-pens. She also averred that it was her opinion, with a reasonable degree of nursing certainty, that an epi-pen that had been expired for less than a year would still contain a therapeutic dose and would not have contributed negatively to the child’s medical condition. According to Sileo, Timothy appropriately maintained Jonathan’s airway at all times despite the child’s resistance and respiratory distress, and appropriately administered oxygen. In addition, when Jonathan’s color worsened, Timothy properly administered a third epi-pen and continued Proventil treatment until Basic Life Support personnel arrived on scene, and took over Jonathan’s care. In opposition, the plaintiffs urged the court to reject Sileo’s expert affidavit because Timothy had failed to disclose that she had retained an expert and disclose her expert’s opinions as required by CPLR 3101 (d). On the merits, the plaintiffs argued that the affidavit of Sileo was insufficient to establish that Timothy had committed no departures from good and accepted nursing practice. In this regard, the plaintiffs contended that Sileo had failed to address why Timothy did not initially assess Jonathan’s condition as being an anaphylactic reaction, or the timeliness of Timothy’s administration of the epi-pens. Moreover, Sileo failed to address whether Timothy violated her duty of care to Jonathan by failing to provide him with a clean lunch area and preparing his lunch in an unclean microwave oven. The plaintiffs further argued that even if the expert affidavit was sufficient to satisfy Timothy’s prima facie burden, summary judgment should be denied because there were triable issues of fact as to whether Timothy departed from good and accepted practice by failing to follow the doctor’s protocol which required the administration of Benadryl and contacting 911 immediately in the event of an anaphylactic reaction.
Evidence submitted by the plaintiffs in opposition to Timothy’s motion included the same expert affidavit by registered nurse Karen McDonald that had been offered in response to The Forum School’s motion.
*19 In reply, Timothy argued that she had not violated CPLR 3101 (d) because a defendant does not have an obligation to disclose the identity of expert witnesses until the defendant has identified the expert he or she intends to call at trial. She added that, in any event, the plaintiffs could not demonstrate any prejudice because they had more than two months to obtain an expert to oppose the motion. Timothy further argued that her duty to Jonathan was to monitor his medical condition, and that the child’s IEP did not require her to be at his side at all times, and ensure that he was never exposed to an unknown allergen. Timothy also noted that the only evidence that Jonathan was actually allergic to blueberries was provided by the errata sheets which improperly attempted to alter the plaintiff mother’s deposition testimony, and that she had a separate motion pending before the court to strike these alterations.
In further support of her position that Jonathan had no known allergy to blueberries, Timothy also submitted the deposition testimony of Jonathan’s pediatric immunologist. The immunologist testified that she had never tested Jonathan for an allergy to blueberries. However, she had performed a scratch test for cranberries which was negative, and cranberries are in the same family of allergens as blueberries.
V
While the separate motions of The Forum School and Timothy were pending, the DOE also moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against it. In support of its motion, the DOE argued that it did not owe the plaintiffs a duty to supervise Jonathan because The Forum School had physical custody and control over the child. Indeed, it was The Forum School’s decision to place Jonathan’s nurse in the hallway to monitor Jonathan instead of inside the classroom, and the DOE was not advised of this move. Moreover, the DOE maintained that it could not be held vicariously liable for Timothy’s alleged negligence because Timothy was an independent contractor recruited and selected by the plaintiffs, and its involvement was limited to reimbursing the plaintiffs for Timothy’s services. Although the DOE acknowledged that several cases had extended a municipality’s duty of care beyond its orbit of authority where the municipality was discharging a nondelegable duty imposed by statute, they argued that those cases were distinguishable because they involved either the commission of intentional torts, or a local school district’s fail *20 ure to include crucial medical information on the IEP of a child placed in another school district. Here, in contrast, the DOE submitted that it had fulfilled its statutory obligation by formulating an appropriate IEP which flagged Jonathan’s medical needs.
As evidentiary support for its position that Timothy was an independent contractor, the DOE relied on the deposition testimony of the plaintiff mother and Timothy, in which both described how Timothy was selected to be one of Jonathan’s nurses, and the instructions and supervision the plaintiff mother provided to Timothy. The DOE also submitted the deposition testimony of Catherine Frisca, Deputy Director of the DOE Office of Related and Contractual Services. At her deposition, Frisca explained that when the DOE cannot find an appropriate individual to provide the services a child is entitled to receive pursuant to his or her IET^ it gives parents a Related Services Authorization, which enables the parents to select their own licensed provider. After the parents select a provider willing to accept the DOE’s payment rates, the DOE performs a fingerprint check and obtains a copy of the provider’s license. According to Frisca, the DOE does not review the experience of a provider selected by the parents, or monitor the provider’s conduct. Frisca further noted that no nurse actually employed by the DOE would be assigned to a private school out-of-state.
In opposition, the plaintiffs argued that despite Jonathan’s placement at The Forum School, he remained within the DOE’s orbit of authority, and thus the DOE was independently liable for its own failure to monitor, supervise, and implement Jonathan’s placement at The Forum School. In support of their position, the plaintiffs argued that the DOE had a statutory duty under the Individuals with Disabilities Education Act (20 USC § 1400 et seq.) to provide Jonathan with a free and appropriate public education in conformity with his IEFJ and that while the DOE chose to provide this education at The Forum School, it was nevertheless still required to supervise and direct that education. They submitted that the DOE, pursuant to its statutory duties, “should have known that The Forum School was placing the student in a precarious situation by removing [Timothy] from the classroom and limiting her ability to monitor and assess the student in the classroom and lunchroom.”
The plaintiffs further argued that the DOE could be held vicariously liable for Timothy’s alleged negligence because Timothy was either an employee or an agent of the DOE. More *21 specifically, the plaintiffs submitted that Timothy must be considered an employee of the DOE because she was hired to fulfill the DOE’s obligation to provide Jonathan with nursing services pursuant to his IEf) which required a nurse to be present with Jonathan at all times. The plaintiffs also claimed that Timothy had been issued a DOE “employee identification card,” even though independent contractors are not provided with such identification, and that she was interviewed by the DOE before she was hired. Furthermore, the plaintiffs maintained that the Related Services Authorization signed by the plaintiff mother and Timothy demonstrated an employment relationship because it set forth Timothy’s obligation to comply with the IED and demonstrated the DOE’s control over Timothy.
Evidence offered in opposition to the DOE’s motion for summary judgment included the DOE Related Services Authorization signed by the plaintiff mother and Timothy. Under the terms of the authorization, Timothy was required to carry her own malpractice insurance. The authorization further provided that no individual who was an employee of the DOE could provide services, and recited that “signatures below indicate approval of the agreement by the parent and provider.” The plaintiffs also submitted memoranda issued by the DOE in May 2005 pertaining to the use of consultants, which were generated based on “IRS concerns that many individuals previously hired as consultants should more appropriately have been acquired as employees.”
In reply, the DOE highlighted deposition testimony which indicated that Timothy was interviewed, selected, retained, and directly supervised by the mother. The DOE also contended that the memoranda relating to the utilization of consultants submitted by the plaintiffs were irrelevant because Timothy was not a “consultant.” In support of its position, the DOE offered the affidavit of the Chief Executive Officer of its Division of Human Resources, who averred that the DOE does not use consultants to provide related services, such as nursing, to disabled students.
VI
In an order dated May 24, 2010, the Supreme Court granted the DOE’s motion for summary judgment in its entirety (29 Misc 3d 579 [2010]). The court found that the DOE had made a prima facie showing that it contracted to have Jonathan’s educational needs met by a private educational facility selected by his parents and over which it lacked any authority or control. *22 Accordingly, Jonathan must be deemed to have passed outside the DOE’s orbit of authority, and any claims against it sounding in negligent supervision by The Forum School must be dismissed. Continuing its analysis, the court concluded that the DOE had also made a prima facie showing that it could not be held vicariously liable for Timothy’s alleged negligence because she was an independent contractor rather than an employee. In this regard, the court pointed out that the Related Services Authorization entered into by the plaintiffs and the nurse expressly stated that it was an agreement by the parent and independent provider for nursing services, and that the independent provider was required to carry his or her own professional liability insurance. Moreover, the DOE memoranda pertaining to the use of consultants issued nearly a year after Jonathan’s death had no bearing on Timothy’s status because the evidence submitted by the DOE established that it did not use the consultant process to hire nurses.
However, the Supreme Court denied the motions of The Forum School and Timothy for summary judgment dismissing the complaint and all cross claims insofar as asserted against them, except to the extent of dismissing the sixth cause of action, which sought punitive damages. The court found that The Forum School had failed to make a prima facie showing of its entitlement to judgment as a matter of law because the voluminous submissions of the parties raised triable issues of fact including, but not limited to, whether the school “adequately supervised Jonathan relative to his exposure to potential allergens on the day in question,” the reasonableness of the school’s decision to require Timothy to remain outside of Jonathan’s classroom, and whether the school “acted reasonably in responding to [Jonathan’s] emergency or in assessing, monitoring and treating Jonathan’s anaphylactic reaction” (29 Misc 3d at 589). The court also found that triable issues of fact existed, inter alia, regarding the sufficiency of Timothy’s supervision, and whether she acted in accordance with good and accepted nursing standards and pursuant to the protocol of Jonathan’s physician in assessing, monitoring, and treating Jonathan.
The Forum School and Timothy appeal from so much of the order as denied their separate motions for summary judgment dismissing the complaint and all cross claims insofar as asserted against them except to the extent of dismissing the cause of action to recover punitive damages, and the plaintiffs cross-appeal *23 from so much of the order as granted the DOE’s motion for summary judgment dismissing the complaint insofar as asserted against it.
VII
Turning first to the issue of whether the DOE’s motion for summary judgment dismissing the complaint was properly granted, we begin our analysis by examining whether the DOE’s statutory mandate to provide the children of New York City with a free and appropriate education expands its duty of care by requiring it to directly supervise a child who is not in its physical custody.
A school’s duty to supervise the students in its charge arises from its physical custody over them (see Pratt v Robinson, 39 NY2d 554, 560 [1976]). The rationale underlying this duty is that when a school takes custody of a child, it deprives the child of the protection of his or her parents or guardian, and thus must give the child the protection of which the child has been deprived (see Restatement [Second] of Torts § 320, Comment b; Pratt v Robinson, 39 NY2d at 560; Nash v Port Wash. Union Free School Dist., 83 AD3d 136, 147 [2011]; Hansen v Bath & Tennis Mar. Corp., 73 AD3d 699, 700-701 [2010]). For this reason, a school’s duty to supervise is generally viewed as being
“coextensive with and concomitant to its physical custody of and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child’s protection, the school’s custodial duty also ceases” (Pratt v Robinson, 39 NY2d at 560; see Stephenson v City of New York, 19 NY3d 1031, 1034 [2012]; Hansen v Bath & Tennis Mar. Corp., 73 AD3d at 701; Banks v New York City Dept. of Educ., 70 AD3d 988, 990 [2010]).
In addition to owing a duty of care to children who are in its physical custody, a school may also owe a duty of care “if a specific statutory duty has been imposed” (Chainani v Board of Educ. of City of N.Y., 87 NY2d 370, 378 [1995]). In Chainani, the Court of Appeals rejected the plaintiffs’ argument that the DOE, which had contracted out the responsibility of transporting children to and from school, could be held directly liable for an alleged violation of Vehicle and Traffic Law § 1174 (b). That provision of the Vehicle and Traffic Law requires a school bus *24 driver to instruct a child who needs to cross the street that he or she must cross in the front of the bus, and to keep the school bus stopped with red signal lights flashing until the child has reached the other side of the street. The Court of Appeals noted that the subject provision placed an affirmative obligation on bus drivers, not upon the school, and that the “web of detailed statutes and regulations concerning independent contractors engaged to provide student transportation services” showed that “[t]he Legislature obviously contemplated that schools would contract out transportation services yet nowhere specified the sort of direct responsibility it imposed on drivers under Vehicle and Traffic Law § 1174 (b)” (87 NY2d at 379). The Court of Appeals further observed, in addressing a companion appeal, Bruce v Hasbrouck, that the school could reasonably rely on the bus company with which it had contracted to provide transportation services “to act responsibly in protecting the safety of the children it was charged to transport and to comply with Vehicle and Traffic Law § 1174” (id. at 380).
Here, the statutory predicate for the plaintiffs’ argument that the DOE can be held directly liable for the failure to provide proper supervision to Jonathan at The Forum School in New Jersey is the Individuals with Disabilities Education Act (20 USC § 1400 et seq. [hereinafter the IDEA]). The IDEA was enacted “to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs” (20 USC § 1400 [d] [1] [A]; see Matter of Northeast Cent. School Dist. v Sobol, 79 NY2d 598, 603 [1992]). The term “free appropriate public education” is defined, in part, as one that is in conformity with the child’s IEP (20 USC § 1401 [9] [D]; see Matter of Northeast Cent. School Dist. v Sobol, 79 NY2d at 603). An IEP is developed jointly by a school official, the child’s teacher and parents, and where, appropriate, the child (see Matter of Northeast Cent. School Dist. v Sobol, 79 NY2d at 603), and serves as “a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs” (School Comm, of Burlington v Department of Ed. of Mass., 471 US 359, 368 [1985]; see Matter of Pawling Cent. School Dist. v New York State Educ. Dept., 3 AD3d 821, 822-823 [2004]). In order to implement the IDEA and further its goal of providing an appropriate educational setting to disabled students, New York has enacted legislation, supplemented *25 by regulations of the Commissioner of Education, “to identify qualifying students and their needs, to review annually the efficacy of the education provided to each student, and to work toward meeting the physical and educational needs of children with handicapping conditions” (Matter of Northeast Cent. School Dist. v Sobol, 79 NY2d at 607; see Education Law §§ 4402, 4403). Where appropriate special education services and programs are not available in the school district charged with the responsibility of providing a disabled student with an appropriate education, that school district may fulfill its obligations under the IDEA and Education Law by contracting with another school district to provide appropriate services (see Matter of Northeast Cent. School Dist. v Sobol, 79 NY2d at 608; Education Law § 4401 [2] [b]).
In support of their position that the DOE’s statutory obligation to formulate an IEP for Jonathan imposed a duty of care to provide him with adequate supervision, the plaintiffs rely upon the Appellate Division, Fourth Department’s decision in Troy v North Collins Cent. School Dist. (267 AD2d 1023 [1999]). In that case, the Lackawanna City School District (hereinafter Lackawanna) formulated an IEP for the plaintiffs son which was implemented by BOCES at a school in the North Collins Central School District (hereinafter North Collins). The IEI] which was “monitored and enforced by Lackawanna,” provided for the plaintiffs son to enroll in a technology class (id. at 1023). The plaintiffs son was injured in technology class while operating a miter saw. Lackawanna moved for summary judgment dismissing the complaint and cross claims asserted against it, and the Supreme Court granted its motion. The Fourth Department reversed, briefly reasoning that
“[e]ven assuming that Lackawanna met its initial burden, we conclude that plaintiff and North Collins raised a triable issue of fact whether plaintiffs son was within Lackawanna’s ‘orbit of authority’ by virtue of Lackawanna’s statutory duty to formulate and enforce the IEP and thus whether Lackawanna owed plaintiff’s son a duty of care in supervising and controlling him” (id. at 1023 [citation omitted], quoting Chainani v Board of Educ. of City of N.Y., 87 NY2d at 378).
The Fourth Department further concluded that there was an issue of fact as to whether Lackawanna was negligent in placing the plaintiff’s son in a situation posing a foreseeable risk of *26 harm by failing to indicate on his IEP that he suffered from cerebral palsy and a seizure disorder.
To the extent that Troy can be read as holding that a school district’s responsibility to formulate and implement an IEP brings a child who is not in its physical custody within its “orbit of authority,” this Court implicitly rejected that rationale in Ferraro v North Babylon Union Free School Dist. (69 AD3d 559 [2010]). In Ferraro, the infant plaintiff, who suffered from developmental delays and other disabilities, alleged that he was injured when he caught one of his fingers in a door hinge at a school in the North Babylon Union Free School District (hereinafter North Babylon), while attending a special educational program operated by Western Suffolk BOCES (hereinafter BOCES). The plaintiffs commenced an action against both North Babylon and BOCES, alleging that they were negligent in permitting the infant plaintiff to operate the door without supervision or assistance. The Supreme Court subsequently granted that branch of North Babylon’s motion which was for summary judgment dismissing so much of the complaint as alleged negligent supervision against it. This Court affirmed, noting that “[although a school has a statutory duty to provide special education services to children who require them, where the school has appropriately ‘contracted-out’ that duty, it ‘cannot be held liable on a theory that the children were in [the school’s] physical custody at the time of injury’ ” (id. at 560 [citation omitted], quoting Chainani v Board of Educ. of City of N.Y., 87 NY2d at 379). We then concluded that
“the district discharged its duty to provide the infant plaintiff special education services by arranging for him to attend a program provided by BOCES. Since the infant plaintiff passed outside the district’s orbit of authority while attending the BOCES program, the Supreme Court properly granted that branch of the district’s motion which was for summary judgment dismissing so much of the complaint as alleged negligent supervision against it” (Ferraro v North Babylon Union Free School Dist., 69 AD3d at 560).
In support of its motion for summary judgment, the DOE demonstrated that it fulfilled its obligations under the IDEA and the Education Law by formulating an appropriate IEP for Jonathan which called for him to attend The Forum School, a private educational facility for special needs children selected by *27 his parents, and to receive nursing services while traveling to and from school and during the school day. In contrast to the IEP at issue in Troy, which was allegedly deficient because it failed to reveal that the child suffered from cerebral palsy and a seizure disorder, here, Jonathan’s IEP for the subject school year alerted The Forum School to the child’s known allergens, specifying that he was severely allergic to “wheat, gluten, eggs, all dairy, perfume” and required nursing services for both his allergies and his asthma. In opposition to the DOE’s motion, the plaintiffs failed to raise an issue of fact as to whether Jonathan’s IEP was deficient. Thus, this is not a case in which the DOE failed to properly identify, in its IEI^ the child’s special needs, and the services necessary to provide the child with an appropriate education.
More fundamentally, the IDEA and the Education Law provisions implementing it recognize that there will be instances where a school district will be required to contract out the provision of educational services because it cannot provide a child with the specialized educational setting necessary to appropriately meet the child’s needs. Having placed Jonathan in a private school equipped to provide educational services to a child with both severe medical problems and developmental delays, the DOE was entitled to reasonably rely on that school to act responsibly in providing for Jonathan’s medical needs, and protecting his safety. The DOE did not exercise control over the day-to-day supervision of Jonathan while he was in the custody of The Forum School, and its statutory obligation to provide him with an appropriate education does not extend so far as to impose a duty on the DOE to supervise Jonathan while he was under the care and custody of The Forum School. To impose a direct duty of supervision on the DOE in these circumstances, where the child is in the custody of a private school in another state, would place the DOE in the position of being an insurer against the alleged acts of negligence committed by The Forum School despite its inability to exercise control over The Forum School’s staffing and educational decisions. For these reasons, we reject the plaintiffs’ argument that the statutory mandate to provide Jonathan with an appropriate education provides a basis to hold the DOE directly liable for any alleged negligence in failing to supervise Jonathan while he was in the physical custody of The Forum School.
Further, the Supreme Court properly concluded, as a matter of law, that the DOE cannot be held vicariously liable for *28 Timothy’s alleged acts of negligence because she was not a DOE employee. Under the doctrine of respondeat superior, an employer is vicariously liable for a tort committed by an employee while the employee is acting within the scope of his or her employment (see Riviello v Waldron, 47 NY2d 297, 302 [1979]; Chuchuca v Chuchuca, 67 AD3d 948, 949 [2009]). Conversely, as a general rule, an employer may not be held liable for an independent contractor’s negligent acts (see Brothers v New York State Elec. & Gas Corp., 11 NY3d 251, 257 [2008]; Kleeman v Rheingold, 81 NY2d 270, 273 [1993]; Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d 663, 668 [1992]; A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 101 AD3d 53, 62 [2012]; Calandrino v Town of Babylon, 95 AD3d 1054, 1055 [2012]). The rationale underlying this rule is that “one who employs an independent contractor has no right to control the manner in which the work is to be done and, thus, the risk of loss is more sensibly placed on the contractor” (Kleeman v Rheingold, 81 NY2d at 274; see Brothers v New York State Elec. & Gas Corp., 11 NY3d at 257-258; Chainani v Board of Educ. of City of NY., 87 NY2d at 380-381). In keeping with this rationale, control of the method and means by which the work is to be done is the critical factor in determining whether one is an independent contractor or an employee for purposes of tort liability (see Calandrino v Town of Babylon, 95 AD3d at 1055; Wecker v Crossland Group, Inc., 92 AD3d 870, 871 [2012]; Araneo v Town Bd. for Town of Clarkstown, 55 AD3d 516, 518-519 [2008]). However, the principle that an employer is not liable for the acts of independent contractors is subject to several categories of exceptions, which include an employer’s negligence in selecting, instructing, or supervising the contractor, and instances in which the employer is under a specific nondelegable duty (see Brothers v New York State Elec. & Gas Corp., 11 NY3d at 258; Kleeman v Rheingold, 81 NY2d at 274; Feliberty v Damon, 72 NY2d 112, 118 [1988]).
To establish that Timothy was an independent contractor and not a DOE employee, the DOE relied, inter alia, on deposition testimony which revealed the role played by the plaintiff mother in selecting Jonathan’s nurses, and supervising their care of him. More specifically, the plaintiff mother testified that she found one of the registered nurses who shared in the duty of accompanying Jonathan to school by placing an advertisement in a local newspaper, and that this nurse in turn recommended Timothy. The plaintiff mother also stated that she discussed *29 Jonathan’s asthma, allergies, and autism with the nurses, outlined the protocol for dealing with his medical problems, and gave them laminated cards to alert them to his known allergens. The plaintiff mother provided the nurses with Jonathan’s lunch and snacks, and packed a medical bag for Jonathan that contained a portable nebulizer and all of his medications. Further, according to Timothy, it was the plaintiff mother who interviewed her for the position, and explained her duties to her. Although the DOE fingerprinted Timothy, gave her an identification card, and paid her, Timothy testified that the DOE never trained or supervised her. In addition, according to the deposition testimony of DOE representative Catherine Frisca, the Related Services Authorization issued to the plaintiffs allowed them to select their own licensed provider, and the DOE’s role was limited to performing a fingerprint check and obtaining a copy of the provider’s license. These submissions established, prima facie, that Timothy was interviewed and selected by the plaintiff mother, that the plaintiff mother instructed Timothy on her duties, and that the DOE exercised no day-to-day supervision or control over Timothy’s performance of her nursing services.
The evidence offered by the plaintiffs in opposition to the DOE’s motion for summary judgment did not raise a triable issue of fact as to whether Timothy was a DOE employee, or whether an exception to the independent contractor rule applies. Although the plaintiffs submitted the Related Services Authorization signed by the plaintiff mother and Timothy, this document does not support their position that Timothy was a DOE employee. Further, there is no evidentiary support for the plaintiffs’ assertion that the identification card issued by the DOE to Timothy was an “employee identification card,” and the memoranda relating to the hiring of consultants was irrelevant in the absence of any indication that Timothy was hired through the consultant process. Moreover, Timothy was required to secure her own professional liability insurance. While the IDEA and Education Law mandate providing “related services,” such as nursing services, to a child who requires them to obtain an appropriate education, they also contemplate that the provision of such services can be contracted out. The plaintiffs point to no authority which precludes the DOE from fulfilling its obligation to provide related services through independent contractors rather than employees.
Moreover, although we recognize the importance of ensuring that children who require nursing services to attend school *30 receive such services from competent professionals, we cannot find that the provision of nursing services is so integral to the DOE’s core responsibility of educating children that, as a matter of public policy, it can be deemed a nondelegable duty that the DOE cannot be permitted to transfer to another (see Sandra M. v St. Luke’s Roosevelt Hosp. Ctr., 33 AD3d 875, 877-878 [2006]; cf. Kleeman v Rheingold, 81 NY2d at 275). Thus, this case does not fall within the exception to the general rule that an employer cannot be held vicariously liable for the negligence of an independent contractor which applies when a nondelegable duty exists (see Sandra M. v St. Luke’s Roosevelt Hosp. Ctr., 33 AD3d at 880).
As an additional basis for the imposition of vicarious liability, the plaintiffs rely on the theory of apparent agency, arguing that by engaging Timothy to perform its legal obligations, the DOE held her out as qualified to perform nursing services. In order to create apparent authority, there must be words or conduct of the principal, communicated to a third party, which give rise to the appearance and belief that the agent possesses authority to act on behalf of the principal (see Hallock v State of New York, 64 NY2d 224, 232 [1984]; Dragotta v Southampton Hosp., 39 AD3d 697, 698 [2007]). The third party must reasonably rely on the appearance of authority based on misleading words or conduct attributable to the principal, and must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal, and not in reliance on the agent’s skill (see Hallock v State of New York, 64 NY2d at 231; Sullivan v Sirop, 74 AD3d 1326, 1328 [2010]; Sampson v Contillo, 55 AD3d 588, 589 [2008]; Dragotta v Southampton Hosp., 39 AD3d at 698). None of these elements is present here. To the contrary, the evidence submitted by the DOE in support of its motion amply demonstrates that the plaintiff mother selected Timothy to be one of Jonathan’s nurses based on her own assessment of Timothy’s qualifications and skill, and not in reliance upon any words or conduct by the DOE. In opposition, the plaintiffs offered no evidence of any misleading conduct on the DOE’s part which could give rise to a belief that Timothy was its agent, or that the plaintiffs accepted Timothy’s nursing services in reliance upon her perceived relationship with the DOE. Accordingly, the Supreme Court properly concluded that the DOE cannot be held vicariously liable for Timothy’s alleged negligence.
*31 VIII
We now address the issue of whether The Forum School’s motion for summary judgment dismissing the complaint and all cross claims insofar as asserted against it should have been granted in its entirety. Initially, we note that the allegations asserted against The Forum School in the plaintiffs’ complaint and verified bill of particulars sounded in negligent supervision, and not in medical or nursing malpractice. Indeed, the primary claim asserted by the plaintiffs in their pleadings was that the school had failed to exercise reasonable care in supervising Jonathan and protecting him from injury, which centered largely on the specific allegation that Jonathan had been deprived of his right pursuant to his IEP “to have the nurse specifically assigned to him in his presence throughout the school day exposing him to serious and known allergens.” Since “the prima facie showing which a defendant must make on a motion for summary judgment is governed by the allegations of liability made by the plaintiff in the pleadings” (Foster v Herbert Slepoy Corp., 76 AD3d 210, 214 [2010]; see Carlucci v Village of Scarsdale, 104 AD3d 797, 798 [2013]), in moving for summary judgment, The Forum School was only required to address the allegations of negligent supervision set forth in the pleadings.
“Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision” (Mirand v City of New York, 84 NY2d 44, 49 [1994]; see Braunstein v Half Hollow Hills Cent. Sch. Dist., 104 AD3d 893 [2013]; Diana G. v Our Lady Queen of Martyrs Sch., 100 AD3d 592, 593 [2012]). This duty of adequate supervision requires teachers and school personnel to provide students with the same level of care that “a parent of ordinary prudence would observe in comparable circumstances” (Mirand v City of New York, 84 NY2d at 49 [internal quotation marks omitted]; see Stephenson v City of New York, 19 NY3d at 1033; Diana G. v Our Lady Queen of Martyrs Sch., 100 AD3d at 593). However, a school is not an insurer of its students’ safety (see Stephenson v City of New York, 19 NY3d at 1033; Mirand v City of New York, 84 NY2d at 49; Diana G. v Our Lady Queen of Martyrs Sch., 100 AD3d at 593).
Since Jonathan was entrusted to the care of The Forum School and was in the school’s physical custody at the time he suffered an anaphylactic reaction, the school unquestionably owed a duty to exercise the same degree of care toward him as *32 would a reasonably prudent parent. In evaluating whether The Forum School made a prima facie showing that it fulfilled this obligation, we are mindful of the fact that Jonathan faced more challenges than an average child his age because he suffered from both severe allergies and asthma, and was autistic and developmentally delayed.
Applying the reasonably prudent parent standard to the circumstances of this case, The Forum School made a prima facie showing that it provided Jonathan with adequate supervision. According to Jonathan’s teacher, Ann Schwartzstein, there were usually only 8 to 10 children in her class, and she had the assistance of three teaching assistants. Thus, as The Forum School contends, the student-teacher ratio in Jonathan’s class was more than reasonable for adequate supervision of the children, even taking into account their special needs. Further, while the plaintiffs’ core allegation against The Forum School is that it violated Jonathan’s IEP by stationing his private nurse outside the classroom, the IEP contained no specific requirement that Jonathan’s nurses remain by his side at all times. The record additionally demonstrates that The Forum School’s decision to station Jonathan’s nurses outside of the classroom was made to foster his independence and educational development. Moreover, the nurses were seated just outside the classroom door where they could keep Jonathan in their line of sight, and were permitted to enter the classroom when necessary to monitor Jonathan. The evidence submitted by The Forum School also showed that it took reasonable steps to protect Jonathan by alerting teachers and staff to his allergies and instructing that he not be given any food except that which came from his home. In addition, The Forum School personnel appropriately called for emergency assistance at 12:24 p.m., within minutes after Jonathan first began to exhibit signs of respiratory distress at the end of the lunch period.
The Forum School also made a prima facie showing that its alleged negligent supervision was not a proximate cause of Jonathan’s anaphylactic reaction. “[Pjroximate cause” has been described as an “elusive” concept, “incapable of being precisely defined to cover all situations” because it stems from “policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct” (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 314 [1980]; see also Pagan v Goldberger, 51 AD2d 508, 509 [1976]). Since the factors which are relevant to an assessment of legal cause vary depending on the *33 facts of the particular case, it is ordinarily “for the finder of fact to determine legal cause, once the court has been satisfied that a prima facie case has been established” (Derdiarian v Felix Contr. Corp., 51 NY2d at 315). To sustain the burden of proving a prima facie case, the plaintiff in a negligence action “must generally show that the defendant’s negligence was a substantial cause of the events which produced the injury” (id.).
In support of its motion for summary judgment, The Forum School relied, inter alia, on the deposition testimony of the plaintiff mother, wherein she admitted that she had never actually learned what triggered Jonathan’s anaphylactic reaction. The Forum School also submitted Jonathan’s death certificate, which was amended at the plaintiff mother’s request to state that acute anaphylaxis caused his death, but did not identify what caused Jonathan to suffer the anaphylactic reaction. Although the plaintiffs theorize that blueberries may have been the triggering substance, The Forum School also offered evidence that Jonathan had never been tested to determine whether he was allergic to blueberries, that blueberries were not included on the list of known allergens provided by Jonathan’s physician, and that Jonathan did not touch or handle the blueberries which Schwartzstein brought into the classroom on the morning of July 21, 2004. The Forum School argued that in the absence of evidence identifying the substance that triggered Jonathan’s anaphylactic reaction, the plaintiffs cannot show that stationing Timothy outside of the classroom rather than allowing her to remain inside seated beside Jonathan while blueberries were displayed in the classroom was a proximate cause of his injury.
In opposition to The Forum School’s motion, the plaintiffs failed to raise a triable issue of fact. Although the Supreme Court identified “the reasonableness of [the school’s] decision to require nurse Timothy to remain outside of Jonathan’s classroom” (Begley v City of New York, 29 Misc 3d 579, 589 [2010]) as a disputed factual issue warranting denial of the motion, the plaintiffs offered no evidence that stationing Timothy just outside of the classroom door impaired her ability to observe and monitor Jonathan in any manner. Nor did the plaintiffs offer any evidence establishing that Jonathan was allergic to blueberries and that blueberries triggered his anaphylactic reaction. Thus, there is no triable issue of fact as to whether The Forum School’s decision to place Jonathan’s nurses, including Timothy, outside the classroom constituted negligent supervi *34 sion, or as to whether Timothy’s position outside the classroom during the classroom lesson which featured a reading of Blueberries for Sal was a proximate cause of Jonathan’s anaphylactic reaction and ensuing injuries.
Further, the affidavit of the plaintiffs’ expert was insufficient to support the Supreme Court’s conclusion that issues of fact exist as to whether The Forum School “adequately supervised Jonathan relative to his exposure to potential allergens on the day in question,” and “acted reasonably in responding to [Jonathan’s] emergency or in assessing, monitoring and treating Jonathan’s anaphylactic reaction” (id.). McDonald’s conclusions were largely based on the premise that Jonathan “was exposed to a substance [to] which he was allergic . . . , likely blueberries, beginning at approximately 10:00 a.m.” However, McDonald’s assertion that Jonathan was allergic to blueberries was based solely on the 2008 errata sheets in which the plaintiff mother attempted to alter her 2006 deposition testimony by adding blueberries to the list of foods and other substances to which Jonathan was allergic. The Supreme Court properly rejected the plaintiff mother’s belated attempt to materially alter her deposition testimony to support a claim that blueberries were one of Jonathan’s known allergens (see Kuzmin v Visiting Nurse Serv. of N.Y., 56 AD3d 438, 439 [2008]; Kelley v Empire Roller Skating Rink, Inc., 34 AD3d 533, 534 [2006]; Marzan v Persaud, 29 AD3d 652, 653 [2006]), and the plaintiffs do not challenge the portion of the Supreme Court’s order which granted Timothy’s motion to strike the errata sheets. Thus, McDonald’s conclusion that exposure to blueberries “likely” triggered Jonathan’s anaphylactic reaction lacked a proper evidentiary basis.
McDonald also faulted the failure of school nurse Elizabeth Golub to create a protocol to ensure that Jonathan was provided with a “disinfected lunch environment.” However, even assuming that the school’s duty under the reasonably prudent parent standard extended to disinfecting his lunch environment, in the absence of proof as to what triggered Jonathan’s reaction, it cannot be concluded that the failure to disinfect the microwave oven used to heat Jonathan’s lunch, and to disinfect his lunch table and place mat, proximately caused his injuries.
Finally, McDonald’s affidavit failed to raise a triable issue of fact as to whether The Forum School responded reasonably to Jonathan’s anaphylactic reaction. McDonald’s claim that Jonathan exhibited signs of respiratory distress for 24 minutes *35 before the school called for emergency assistance is not supported by the record. The deposition testimony of both Timothy and Schwartzstein indicates that Jonathan asked for his nebulizer and began exhibiting the first symptoms of respiratory distress at approximately 12:15 p.m. or 12:20 p.m. as the lunch period was ending, and documentary evidence establishes that the school placed a call to 911 at 12:24 p.m. The plaintiffs’ position that Jonathan began exhibiting symptoms of respiratory distress as early as 12:00 misconstrues a portion of Timothy’s testimony in which she indicated that they had been in the lunchroom “for at least 20 minutes” when Jonathan asked for his neubulizer. Thus, there is no evidentiary foundation for McDonald’s opinion that The Forum School delayed 24 minutes before calling 911.
Further, “[w]hile modern practice permits a plaintiff to successfully oppose a motion for summary judgment by relying on an unpleaded cause of action which is supported by the plaintiffs submissions” (Comsewogue Union Free School Dist. v Allied-Trent Roofing Sys., Inc., 15 AD3d 523, 524 [2005]; see Lombardo v Mastec N. Am., Inc., 68 AD3d 935, 936 [2009]), here, the plaintiffs offered no excuse for their delay in asserting a nursing malpractice claim against The Forum School for the first time in opposition to summary judgment, after discovery had been completed and their note of issue and certificate of readiness filed, which alone warrants rejection of the claim (see Langan v St. Vincent’s Hosp. of N.Y., 64 AD3d 632, 633 [2009]; Yousefi v Rudeth Realty, LLC, 61 AD3d 677, 678 [2009]; Mainline Elec. Corp. v Pav-Lak Indus., Inc., 40 AD3d 939 [2007]). In any event, even assuming that Golub owed a duty of professional care to Jonathan, despite the fact that The Forum School had never undertaken to provide Jonathan with nursing services and evidence that the plaintiff mother had instructed Golub that the private nurses would be completely responsible for providing such services, the affidavit of the plaintiffs’ expert nurse was insufficient to raise a triable issue of fact as to whether Golub committed any departures from good and accepted nursing practice. McDonald’s conclusions that Golub committed departures by permitting Timothy to administer an expired epi-pen and failing to ensure that Jonathan’s airway was kept clear were not supported by the deposition testimony and evidence upon which she relied, and thus lacked an evidentiary foundation. Accordingly, these claims were insufficient to defeat summary judgment (see Diaz v New York Downtown *36 Hosp., 99 NY2d 542, 544 [2002]; Flushing Sav. Bank, FSB v Bitar, 106 AD3d 690 [2013]; Reilly v Ninia, 81 AD3d 913, 916 [2011]; Courtney v Port Auth. of N.Y. & N.J., 34 AD3d 716, 718 [2006]).
IX
With regard to Timothy’s motion for summary judgment, we first address the plaintiffs’ claim that the Supreme Court should have disregarded the expert affidavit of registered nurse Maureen Walls Sileo because Timothy failed to disclose her expert’s identity prior to the completion of discovery. Although CPLR 3101 (d) (1) (i) requires a party, upon request, to identify the expert witnesses the party expects to call at trial, it “does not require a party to respond to a demand for expert witness information ‘at any specific time’ ” (Aversa v Taubes, 194 AD2d 580, 582 [1993], quoting Lillis v D’Souza, 174 AD2d 976, 976 [1991]; see Rivers v Birnbaum, 102 AD3d 26, 35 [2012]). Thus, “the fact that the disclosure of an expert pursuant to CPLR 3101 (d) (1) (i) takes place after the filing of the note of issue and certificate of readiness does not, by itself, render the disclosure untimely” (Rivers v Birnbaum, 102 AD3d at 41). We have also recognized that precluding an expert’s affidavit in the context of a summary judgment motion based solely on the failure to provide expert disclosure prior to the filing of the note of issue “does not necessarily advance the court’s role of determining the existence of a triable issue of fact,” particularly in a medical malpractice action, where a party must generally submit an affidavit or affirmation from an expert medical provider to meet its prima facie burden {id. at 42). Thus,
“[precluding an expert’s affidavit solely on the ground that the offering party did not disclose the expert’s identity pursuant to CPLR 3101 (d) (1) (i) prior to the filing of the note of issue and certificate of readiness is not consistent with the purpose and procedural posture of a motion for summary judgment” {id.).
Applying these principles here, the Supreme Court did not improvidently exercise its discretion in considering the affidavit of Timothy’s expert (see Salcedo v Weng Qu Ju, 106 AD3d 977 [2013]; LeMaire v Kuncham, 102 AD3d 659, 661 [2013]; Rivers v Birnbaum, 102 AD3d at 42-43). Notably, there is no indication in the record that Timothy retained Walls Sileo before the note of issue was filed and deliberately delayed in responding to the *37 plaintiffs’ expert witness demand, or that the delay in disclosing Walls Sileo’s identity hampered the plaintiffs’ ability to respond to her motion. Indeed, the plaintiffs responded to Walls Sileo’s affidavit with the same expert affidavit they had utilized in opposing The Forum School’s motion.
With respect to the merits, Timothy made a prima facie showing that she did not depart from good and accepted nursing and professional practice in her treatment and care of Jonathan on July 21, 2004, through the affidavit of her expert Walls Sileo (see Makinen v Torelli, 106 AD3d 782 [2013]; Garbowski v Hudson Val. Hosp. Ctr., 85 AD3d 724, 727 [2011]; Perro v Schappert, 47 AD3d 694 [2008]). Walls Sileo reviewed Timothy’s response to the symptoms of respiratory distress Jonathan began to display in the lunchroom, and opined that it was not a departure from accepted nursing practice for Timothy to initially believe that Jonathan was suffering from an asthma attack based on his medical history and symptoms, and to develop a differential diagnosis of anaphylaxis once his condition worsened. She further opined that it was not within the scope of a private nurse’s duty to guard a child from exposure to substances to which he was not known to be allergic. Walls Sileo also detailed Timothy’s response to Jonathan’s deteriorating condition in the classroom, and concluded, among other things, that Timothy appropriately administered epi-pens for the treatment of suspected anaphylaxis, and that the administration of liquid Benadryl was contraindicated because of the risk of aspiration. Walls Sileo further averred that an epi-pen that had been expired for less than a year would still contain a therapeutic dose and would not have contributed negatively to Jonathan’s medical condition.
Timothy’s evidentiary submissions also established that she was a registered nurse hired to provide Jonathan with nursing services which included the administration of nebulizer treatments for his asthma. In evaluating whether she can be held liable on a negligent supervision theory under such circumstances, we note that it is a fundamental precept of tort law that “[t]he existence and scope of an alleged tortfeasor’s duty is, in the first instance, a legal question for determination by the courts” (Sanchez v State of New York, 99 NY2d 247, 252 [2002]; see Di Ponzio v Riordan, 89 NY2d 578, 583 [1997]; Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 585 [1994]). Here, while Timothy was charged with the responsibility of accompanying Jonathan to school to monitor his medical condi *38 tion and administer medications, he was not in her general physical custody during the school day. Rather, Jonathan was in the custody of The Forum School during school hours, and it was the duty of the school’s teachers and personnel to provide him with adequate supervision in the absence of his parents. Under these circumstances, the scope of Timothy’s duties as a nurse did not extend to providing Jonathan with adequate supervision by ensuring that The Forum School provided him with a reasonably safe environment. Accordingly, Timothy also made a prima facie showing that she was entitled to dismissal of the plaintiffs’ negligent supervision claims as a matter of law.
In opposition to Timothy’s prima facie showing, the plaintiffs failed to raise a triable issue of fact. The conclusion of the plaintiffs’ expert nurse, Karen McDonald, that Timothy departed from good and accepted nursing practice by failing to immediately recognize that Jonathan was suffering an anaphylactic reaction was based largely on the premise that he was exposed to a known allergen that morning, which should have heightened Timothy’s awareness to the signs of anaphylaxis. However, as discussed above, that premise is without evidentiary foundation because there is no competent proof that Jonathan was known to be allergic to blueberries, and that Timothy was aware of any such allergy. Thus, McDonald’s opinion that Timothy should have immediately recognized that Jonathan was suffering an anaphylactic reaction when he first experienced breathing difficulties in the lunchroom, and instituted the protocol for treatment of anaphylaxis by administering Benadryl prior to administering an epi-pen, is not grounded on facts in the record. Further, McDonald failed to address Sileo’s statement that the administration of Benadryl once Timothy developed a differential diagnosis of anaphylaxis was contraindicated because of the risk of aspiration. Moreover, even assuming that the first epi-pen Timothy administered was indeed expired, as the plaintiffs allege, McDonald failed to address Sileo’s opinion that an epi-pen that had been expired for less than a year would still contain a therapeutic dose, and would not have contributed negatively to the child’s medical condition. Accordingly, the Supreme Court should have granted Timothy’s motion for summary judgment dismissing the complaint and all cross claims insofar as asserted against her in its entirety.
The plaintiffs’ remaining contentions are without merit.
Accordingly, the order is reversed insofar as appealed from, on the law, and the separate motions of The Forum School and *39 Timothy for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them are granted in their entirety; and the order is affirmed insofar as cross-appealed from.
Balkin, Leventhal and Chambers, JJ., concur.
Ordered that the order is reversed insofar as appealed from, on the law, and the separate motions of the defendants The Forum School and Michelle Timothy for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them are granted in their entirety; and it is further,
Ordered that the order is affirmed insofar as cross-appealed from; and it is further,
Ordered that one bill of costs is awarded to the defendants appearing separately and filing separate briefs, payable by the plaintiffs.

. The City of New York was also named as a defendant in the action, and the City moved, together with the DOE, for summary judgment dismissing the complaint and all cross claims insofar as asserted against them. The Supreme Court granted the branch of the joint motion which sought relief on behalf of the City, concluding that the City could not be held vicariously liable for the alleged negligence of the DOE because the City and DOE are separate and distinct legal entities. The plaintiffs do not challenge the granting of the City’s motion for summary judgment on this appeal.

. McDonald’s assertion that Jonathan was allergic to blueberries was based on errata sheets sworn by the plaintiff mother on April 23, 2008. The errata sheets attempted to alter the plaintiff mother’s May 24, 2006, deposition testimony by adding blueberries to the list of food and other substances Jonathan was allergic to, and claiming that doctors had told her not to give Jonathan blueberries.